Gregory B. Collins (#023154)
Molly Rogers (#028212)
KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
Telephone: (480) 421-1001
Facsimile:  (480) 421-1002
gbc@kflawaz.com
cmr@kflawaz.com

*Attorneys for ThermoLife International, LLC*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ThermoLife International, LLC, an Arizona limited liability company, | Case No.  2:18-cv-2980-PHX-HRH |
| Plaintiff, | **RESPONSE TO DEFENDANTS' MOTION TO DISMISS** |
| vs. | (*Oral argument requested*) |
| NeoGenis Labs, Inc. d/b/a HumanN, a Texas corporation, | |
| Defendant. | |

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Plaintiff ThermoLife International, LLC ("ThermoLife") hereby responds to Defendant NeoGenis Labs, Inc. d/b/a HumanN's ("HumanN's") Motion to Dismiss (Dkt. 24). HumanN's Motion is nothing more than an attempt to smear ThermoLife before this Court.[1] Rather than actually challenge the sufficiency of ThermoLife's pleading, HumanN wastes this Court's time by attaching thirteen exhibits to its Motion to Dismiss and arguing extraneous and irrelevant matters. HumanN wants this Court to ignore the federal rules of evidence and civil procedure and have this Court rule on disputed factual issues at the pleading stage, based on inadmissible hearsay. The Court should strike these exhibits and the related argument.[2] ThermoLife has filed a 32-page complaint that includes 124 paragraphs of factual background and screenshot images of HumanN's advertising and product labels. The facts pleaded meet the Rule 9(b) standard and provide ample support for ThermoLife's claims. The Court should deny Human's Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   LEGAL STANDARD

"A motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir.1997). The "court will not dismiss a complaint unless it appears beyond a doubt that the plaintiff can prove no set of facts to support the claim that would entitle the plaintiff to relief." *Pestube Sys., Inc. v. HomeTeam Pest Def., LLC.*, No. CIV-05-2832-PHX-MHM, 2006 WL 1441014, at *1 (D. Ariz. May 24, 2006). "In reviewing a Rule 12(b)(6) motion, a

---

[1]   A detailed response to HumanN's accusations against ThermoLife will not serve to aid the Court in addressing the substance of HumanN's Motion. Frankly, a complete response to HumanN's baseless accusations would greatly exceed the page limits for this response. For this reason, ThermoLife writes only briefly here to address these accusations. ThermoLife is not a "patent troll." It practices the patents that it licenses, selling its own products and raw materials (that are often necessary to practice ThermoLife's patents) to many of the largest dietary supplement companies in the world. The simple fact is that the dietary supplement industry is full of individuals that are willing to say and do anything to make a buck. The barriers to entry are low and the reward for creating the next hot supplement is astronomical. As a result, there are hundreds of companies that do little or no research regarding intellectual property rights prior to bringing a new product to market. Worse still, because the dietary supplement industry is not as regulated as the pharmaceutical industry, even larger companies in the industry (like HumanN) are willing to do or say anything to make a sale.
[2]   Pursuant to LR Civ. 7.2(m)(2), this request to strike is being incorporated into ThermoLife's response and is not being submitted through a separate motion.

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

court must construe the complaint in the light most favorable to the plaintiff and must accept all well-pleaded factual allegations as true." *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). This standard is so plaintiff-friendly that a complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (internal citation omitted).

## II.    ARGUMENT

### A.    The court should entirely disregard the matters outside the Complaint.

Unable to combat the well-pleaded substance of Plaintiff's claims, HumanN attaches 13 exhibits to its Motion, then relies on these new documents. HumanN's litany of extrinsic evidence includes: (1) a press release from the Nobel Foundation announcing its 1998 award; (2) three articles from scientific journals regarding nitrates and nitrites; (3) articles from Sports Illustrated and the New York Times; (4) the docket sheet from a case previously filed by ThermoLife against HumanN; (5) a settlement communication email between the parties' principals just prior to the filing of this lawsuit;[3] (6) a press release issued by ThermoLife regarding the filing of this case; (7) filing receipts for three patent applications not referenced in the Complaint; (8) a "Letter to the Editor" written by HumanN's principal to "Nitric Oxide," described as the "Official Journal of the Nitric Oxide Society"; (9) a 2016 certificate of analysis for one of HumanN's products; and (10) a copy of U.S. Patent No. 9,119,823.[4] (*See* Dkt. 24-2.) As this Court is well aware, facts *other* than those pleaded in the complaint are irrelevant. *See, e.g., Humphreys & Partners Architects, L.P. v. Metro. Life Ins.*, No. 04-CV-2994-PHX-FJM, 2005 WL 8160731, at \*1

---

[3]    It bears noting that HumanN has cited this email, which is specifically labeled as a "settlement communication," to accuse ThermoLife of "frank extortion" using a "worthless patent." *See* Motion, at 5:10-21. Federal courts have held that pre-litigation licensing offers are "precisely the sort of settlement offers-made in an effort to avoid litigation-that FRE 408 bars" and that allowing the introduction of this type of licensing offer as substantive evidence of a claim's validity "would frustrate FRE 408's underlying purpose: 'the promotion of the public policy favoring the compromise and settlement of disputes.'" *Samsung Elecs. Co. v. Quanta Comp., Inc.*, No. C-00-4524 VRW, 2006 WL 2850028, at \*5 (N.D. Cal. Oct. 4, 2006), quoting Committee Notes to Fed. R. Evid. 408.

[4]    If the Court elects to consider HumanN's extrinsic evidence, doing so will convert HumanN's Rule 12(b)(6) motion to dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Bohac v. West*, 85 F.3d 306, 312 (7th Cir. 1996).

Keesmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

(D. Ariz. Aug. 25, 2005). Here, none of HumanN's exhibits were attached to or referenced in the Complaint; they should not be considered. Because HumanN's Motion is entirely reliant upon these new allegations, the Motion necessarily fails.[5]

**B.     ThermoLife has adequately pleaded its standing to bring claims.**

HumanN contends that ThermoLife lacks standing to bring its claims because: (1) ThermoLife fails to allege a competitive injury caused by HumanN's sale of N-O indicator strips; and (2) does not allege that it sells (or intends to sell) a product that directly competes with HumanN's products.[6] (Motion, at 7:24-10:24.)

"For purposes of ruling on a motion to dismiss for want of standing, [the court] must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011), quoting *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (internal citations omitted)

As detailed below, ThermoLife's 32-page complaint sets out detailed allegations that ThermoLife and HumanN compete with one another in the dietary supplement industry. There is no basis to dismiss any of ThermoLife's claims for lack of standing.

**1.     ThermoLife has adequately alleged standing to bring a false marking claim.**

Under 35 U.S.C. § 292, any "person who has suffered a competitive injury … may

---

[5]     The Court may take judicial notice of matters of public record on a motion to dismiss. *See Mack v. S. Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S. Ct. 2166 (1991). At most, this would allow the Court to consider Exhibit 5 (docket sheet of prior case filed by ThermoLife) and Exhibits 8 and 13 (public records of the USPTO).

[6]     While settlement communications are inadmissible, it is worth nothing that the settlement communications that HumanN has impermissibly attached to its motion include an offer from HumanN to ThermoLife to license ThermoLife's patents for a substantial monetary payment. (Dkt. 24-2.) HumanN sought this license so it could continue to sell the very same products that are at issue in this lawsuit. This fact alone demonstrates that ThermoLife and HumanN are competitors; HumanN's continued sale of these products, without a license, harms sales of ThermoLife products and products that are or would be sourced from ThermoLife.

3

file a civil action in a district court of the United States for recovery of damages adequate to compensate for the injury." 35 U.S.C. § 292(b). The hurdle for standing on a false marking claim is low. Indeed, the "competitive injury" requirement was incorporated by Congress into § 292 to curb litigation by "unrelated" third parties. *See Sukumar v. Nautilus, Inc.,* 785 F.3d 1396, 1401 (Fed. Cir. 2015). That is hardly the case here.

Tellingly, HumanN cites no binding authority.[7] "While the Ninth Circuit has not yet interpreted 'competitive injury' in the patent marking context, as previously interpreted in the context of a Lanham Act claim, the court imposes a ***general presumption of a competitive injury*** whenever the defendant and plaintiff are direct competitors and defendant's misrepresentation has a tendency to mislead consumers." *Ira Green, Inc. v. J.L. Darling Corp.*, No. 3:11-CV-05796-RJB, 2011 WL 6218146, at *4 (W.D. Wash. Dec. 5, 2011) (emphasis added), citing *TrafficSchool.com, Inc. v. Edriver Inc.,* 653 F.3d 820 (9th Cir. July 28, 2011). In the Lanham Act context, the Ninth Circuit has defined "competitive injury" as conduct "harmful to the plaintiff's ability to compete with the defendant." *Barrus v. Sylvania,* 55 F.3d 468, 470 (9th Cir. 1995); *see also McCabe v. Floyd Rose Guitars,* No. 10CV581 JLA (JMA), 2012 WL 1409627 (S.D. Cal. Apr. 23, 2012). And the Federal Circuit has broadly interpreted § 292's "competitive injury" to include any "disadvantage in [plaintiff's] ability to compete caused by defendant's unfair competition." *Sukumar*, 785 F.3d at 1400.

HumanN is simply wrong that ThermoLife cannot show a competitive injury without being a head-to-head competing seller. District courts have found competitive injury adequately pled in false marking cases under a variety of factual circumstances. For example, courts have held that competitive injury includes: "predatory pricing, price discrimination, injury to competition, [] loss of business opportunities," or "when false

---

7    In fact, several of the cases cited by HumanN are entirely distinguishable or have no bearing at all on the issue of standing. *See Infinity Headwear & Apparel, LLC v. Jay Franco & Sons, Inc.*, No. 15-CV-1259 (JPO), 2017 WL 3309724 (does not discuss Lanham Act standing); *Salina Valley Mem'l Healthcare Sys. V. Monterey Peninsula Horticulture, Inc.*, No. 5:17-cv-07076, 2018 WL 2445349 (false advertising claim brought by hospital against agricultural farm and ERISA benefits plan); *Acad. Of Doctors of Audiology v. Int'l Hearing Society*, 237 F.Supp. 3d 644, 663 (E.D. Mich. 2017 (false advertising claim brought by non-profit trade association).

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

marking is "likely to, or at least has the tendency to, discourage and deter persons and companies . . . from commercializing competing products and deters consumers from using competing products." *See Fasteners for Retail Inc. v. Andersen,* Civ. No. 11 C 2164, 2011 WL 5130445, at \*6 (N.D. Ill. Oct. 28, 2011); *Seirus Innovative Accessories, Inc. v. Cabela's Inc.*, 100 U.S.P.Q.2d 1953, 2011 WL 6400630 (S.D. Cal. 2011); *Server Tech., Inc. v. Am. Power Conversion Corp.*, No. 3:06-CV-00698-LRH, 2012 WL 3061023, at \*2 (D. Nev. July 26, 2012) (denying a motion to dismiss because allegations that defendant's false marking "upset the competitive relationship" and gave the perception that defendant was an "innovator with superior products" sufficient to confer standing).

ThermoLife's complaint easily meets this standard. ThermoLife has alleged that HumanN "is a direct competitor of ThermoLife in the sale of nitrite and nitrate technology" and ThermoLife has "suffered a competitive injury as a result of Defendants' violation of 35 U.S.C. § 292." (Complaint, ¶¶ 37, 131.) As ThermoLife explains in detail, ThermoLife licenses patented nitrite and nitrate technology to the makers of dietary supplements, who then sell their dietary supplement products to end-user consumers. (*Id.* ¶¶ 21-38.) ThermoLife holds at least 17 patents on amino acid nitrate (and in some cases nitrite) compounds, compositions. (*Id.* ¶¶ 25-26, 28, 30, 33-36) These amino acid nitrates and methods are used in many of the top-selling dietary supplements. (*Id.* ¶¶ 27-32.) These dietary supplements compete with HumanN's products. Because HumanN's dietary supplement products (SuperBeets, BeetElite and Neo40) and N-O Indicator Strips are falsely marked and advertised in a way that conveys to the public that these supplements contain patented nitrate technology, HumanN's products are being purchased by customers that use or would use products that rely on ThermoLife's patented nitrate technology. In short, ThermoLife has suffered a competitive injury because every consumer that chooses to purchase HumanN's products over one that uses or would use ThermoLife's patented nitrate technology constitutes "dollars" taken away from ThermoLife. *See Ira Green*, 2011 WL 6218146, at

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

*4; *Fasteners for Retail*, 2011 WL 5130445, at * 6.

Furthermore, HumanN's false marking tricks consumers into believing its products are protected by patents and, thus, falsely equates its products to those using ThermoLife's technology which causes lost licensing fees and dilution of the value of ThermoLife's patents. *See Frompovicz v. Niagara Bottling, LLC*, 313 F. Supp. 3d 603, 610 (E.D. Pa. 2018). As alleged, current and potential licensees will be and have been deterred from licensing ThermoLife's patents because HumanN gives the impression that the nitrate supplement space is crowded with patented technology (other than ThermoLife's) and that HumanN by the way of patent protection has a monopoly on their products when in fact only ThermoLife can license many of technologies practiced by HumanN. HumanN's argument that a licensor, like ThermoLife, cannot be competitively harmed is non-sensical, and HumanN cites no law in support of such claim. On the contrary, in *Logan Farms v. HBH, Inc. DE*, 282 F. Supp. 2d 776 (S.D. Ohio 2003), the district court held, in the similar context of a false advertising claim, a patent holder had a reasonable interest in preventing others from falsely advertising that their products used the same technology as patent holder's patents. *See Seirus*, 2011 WL 6400630, at *6.

**2.      ThermoLife has also adequately alleged standing to bring a false advertising claim.**

The Lanham Act provides a private right of action to anyone believing he is likely to be damaged by a person who falsely or misleadingly describe or represent facts in connection with the sale of goods and services. 15 U.S.C. § 1125(a). As HumanN correctly recites, under the standard set out in *Lexmark*, a false advertising plaintiff need only allege that his "interests fall within the zone of interests" protected by the Lanham Act. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1390 (2014). A plaintiff comes within the zone of interest by "alleg[ing] an injury to a commercial interest in reputation or sales." *Id.* "The 'zone of interest' test is not a particularly demanding one, and the benefit of the doubt goes to the one alleging the

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

cause of action." *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 165 F. Supp. 3d 937, 946 (S.D. Cal. 2016). And, under Ninth Circuit law, a commercial injury is presumed for standing purposes "when plaintiff competes directly with defendant" because competitors "vie for the same dollars." *See TrafficSchool.com,* 653 F.3d at 827.

As discussed above, ThermoLife has alleged that HumanN's products are falsely marketed and sold as containing patented nitrate technology. As alleged, ThermoLife is a market leader in the licensing and use of patented nitrate technology in dietary supplements and it directly competes with HumanN in that space. This is sufficient to allege standing under 15 U.S.C. § 1125(a).

### 3.    HumanN's arguments on standing have no merit.

First, HumanN argues that ThermoLife lacks standing because it does not sell nitric oxide indicator strips or otherwise directly compete (or plan to compete) in the indicator strip space. But it is not necessary for the Court to find that the parties are in direct competition. *See, e.g., Merck Eprova AG v. Brookstone Pharm., LLC*, 920 F. Supp. 2d 404, 416 (S.D.N.Y. 2013) (finding that Merck had standing to bring a Lanham Act claim "[a]lthough Merck and Acella are not direct competitors, [where] Merck and Acella both produce competing sources of folate for use in dietary supplements"); *see also Obesity Research*, 165 F. Supp. 3d at 946.

Here, ThermoLife alleges that HumanN's false statements (regarding five different HumanN products, not only N-O indicator strips) harmed ThermoLife's ability to license its patents and the sales of its licensed products. HumanN advertises that it has the only method to test whether consumers are Nitric-Oxide deficient—once consumers are tricked into purchasing that product (the indicator strips) then HumanN sells them HumanN's allegedly patent-protected cure (SuperBeets, BeetElite, Neo40). (*See* Complaint, at ¶¶ 44-49.) As alleged in the Complaint, HumanN's website advertises the strips as a complementary product to its Nitric Oxide supplements and "Frequently purchased together." Because HumanN and ThermoLife are competitors in the Nitric Oxide space, the strips necessarily flow into the same market. ThermoLife does not have

1   to sell indicator strips to be harmed by the false advertising scheme.

2        HumanN also argues that ThermoLife lacks standing because it fails to allege

3   specific lost sales or identify its sublicenses. Neither is required at the pleading stage.

4   Tellingly, HumanN relies on cases that deal with the adequacy of evidence on summary

5   judgment. *See, e.g., Gravelle v. Kaba Ilco Corp.*, 684 F. App'x 974, 978 (Fed. Cir.

6   2017); *Sukumar*, 785 F.3d at 1405. Here, ThermoLife has alleged a competitive injury

7   based on its role as a licensor of patented nitrate technology; that is sufficient. *See*

8   *ArtSkills, Inc. v. Royal Consumer Prod., LLC*, No. 3:17-CV-1552 (VAB), 2018 WL

9   3520431, at *7 (D. Conn. July 20, 2018).

10       ThermoLife has alleged competitive and economic injuries from HumanN's false

11  marking and false advertising. As such, ThermoLife has standing to bring claims.

### C.   ThermoLife has adequately pleaded a false advertising claim.

12       ThermoLife adequately pleads each element of a Lanham Act § 43(a)(2) false

13  advertising claim: "(1) a false statement of fact by the defendant in a commercial

14  advertisement about its own or another's product; (2) the statement actually deceived or

15  has the tendency to deceive a substantial segment of its audience; (3) the deception is

16  material, in that it is likely to influence the purchasing decision; (4) the defendant caused

17  its false statement to enter interstate commerce[8]; and (5) the plaintiff has been or is

18  likely to be injured as a result of the false statement, either by direct diversion of sales

19  from itself to defendant or by a lessening of the goodwill associated with its products."

20  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).[9] Whether

21  or not false advertising must be pleaded with Rule 9(b) particularity,[10] ThermoLife's

22  complaint is more than sufficient.

23       HumanN conflates the applicable pleading standard with the standard of proof

24  _____

[8]   HumanN does not dispute that the advertising entered interstate commerce.

25  [9]   In its motion, HumanN modified multiple words and phrases within the five-part *Southland* standard without acknowledging its curious revisions.

26  [10]  HumanN relies on a non-binding decision from the Federal Circuit and a factually distinguishable decision from the District of Arizona (Dkt. 24 at 2:17-20) to assert that a

27  Lanham Act § 43(a)(2) false advertising claim must be pleaded with Rule 9(b) particularity. ThermoLife disagrees, as there is no binding precedent holding that every

28  false advertising claim must be pleaded with Rule 9(b) particularity. Regardless, the Complaint far exceeds any applicable pleading standard.

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

1
2
3
4
5
6
7
8
9
10

required at trial. In its entire motion, HumanN cites only *one* (factually distinguishable) case where a false advertising claim was dismissed at the pleading stage. *See Williams & Lake LLC v. Genesis Sys. LLC*, No. CV-17-00117-TUC-CKJ, 2017 WL 6418937 (D. Ariz. Sept. 13, 2017). In *Williams*, several of the supposedly "false" advertising statements were proven true <u>*by allegations in the plaintiff's own complaint*</u> and, most critically, in explaining its dismissal of plaintiff's claims at the pleading stage the district court noted: "[t]he essence of Plaintiff's argument involves an allegation that Defendants are falsely advertising that they invented the digital brake system . . . . Inventorship is simply not a cognizable cause of action under the Lanham Act." *Williams & Lake LLC*, 2017 WL 6418937, at *8.

11
12
13
14
15
16

Every other case HumanN cites involves actual *evidence* presented on summary judgment, in support of a request for a preliminary injunction, or after trial.[11] As the U.S. Supreme Court has made clear, there is a sharp distinction between the *evidence* required to prevail on a Lanham Act claim and the level of *pleading* required to survive a motion to dismiss; having pleaded a viable claim, the plaintiff "is entitled to a chance to prove its case." *See Lexmark*, 572 U.S. at 140.

17
18

ThermoLife alleges specific facts sufficient to support each element of its false advertising claim. HumanN's motion should be denied.

19

### 1.   ThermoLife has alleged false statements of fact.

20

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may

21
22
23
24
25
26
27
28

---

[11]   *See Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, No. C 12-03762 SI, 2014 WL 572290, at *11 (N.D. Cal. Feb. 11, 2014) (granting summary judgment because, after almost two years of discovery, plaintiff "failed to provide sufficient *evidence* to create a genuine dispute of fact"); *Zeltiq Aesthetics, Inc. v. BTL Indus., Inc.*, 32 F. Supp. 3d 1088, 1105 (N.D. Cal. 2014) (denying preliminary injunction where plaintiff failed to meet requisite evidentiary burden to show likelihood of success on the merits); *William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255, 257–58 (9th Cir.), *suppl'd sub nom. William H. Morris Co. v. Grp. W. Inc.*, 67 F.3d 310 (9th Cir. 1995) (reversing trial court's ruling on false advertising claim *after bench trial* based on inconclusive state of evidentiary record); *Sci. Weight Loss, LLC v. U.S. Med. Care Holdings, LLC*, No. CV 08-2852 PSG FFMX, 2008 WL 4533918, at *4 (C.D. Cal. Oct. 6, 2008) (denying preliminary injunction because plaintiff failed to set forth *evidence* establishing a reasonable probability of success on the merits); *Moroccanoil, Inc. v. Dermorganic Labs., Inc.*, No. CV 09-4257 CBM (PAX), 2009 WL 10675634, at *13 (C.D. Cal. Nov. 9, 2009) (denying preliminary injunction where plaintiff failed to meet the requisite evidentiary burden to show likelihood of success on the merits and irreparable harm).

show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland*, 108 F.3d at 1139. "The nature, characteristics, and qualities of a product under the Lanham Act are [] properly construed to mean characteristics of the good itself." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008) (internal citations omitted). To be clear, "the Lanham Act encompasses more than blatant falsehoods. It embraces innuendo, indirect intimations, and ambiguous suggestions evidenced by the consuming public's misapprehension of the hard facts underlying an advertisement." *William H. Morris Co.*, 66 F.3d at 257–58.

HumanN's false advertising statements are spelled out clearly throughout the Complaint:

- Directly contrary to HumanN's advertising, HumanN's N-O Indicator Strips are not "patent pending"(Complaint, at ¶¶ 4-5, 45, 83);

- HumanN's N-O Indicator Strips do not work because you cannot test whether an individual is N-O deficient by simply testing their saliva (*Id.* ¶¶ 4, 5, 10, 50-52);

- HumanN falsely claims that it is the only company that can sell Nitric Oxide supplementation technology (*Id.* ¶¶ 5, 46);

- HumanN falsely claims that its BeetElite, SuperBeets, and Neo40 products practice six patents licensed from the University of Texas and still advertises the products as practicing those patents even after removing many of them from product labels (*Id.* ¶¶ 5, 7, 8, 54, 56-60, 73-74, 83, 84, 86);

- Contrary to HumanN's advertising, the licensed patents do not protect "patented Nitric Oxide technology" (*Id.* ¶¶ 5, 8, 54, 83, 91-100);

- HumanN falsely claims that its research is "Nobel-Prize winning" (*Id.* ¶¶ 5, 9, 54, 83, 101-109);

- HumanN falsely claims that, "There is not any product out there, despite the dozens if not hundreds of products, Nitric Oxide products on the market (food or supplement), that do what our technology does" (*Id.* ¶¶ 5, 10, 54, 110-115);

- HumanN falsely advertises its products as Foods or Dietary Supplements (*Id.* at ¶¶ 116-124).

As ThermoLife alleges, HumanN made these "false and misleading statements of fact concerning its SuperBeets, BeetElite, Neo40 and N-O Indicator Strips products in commercial advertisements." (*Id.* at ¶ 133.) Not only does ThermoLife specifically

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

identify each falsity, but ThermoLife's extensive complaint takes the additional step of alleging *why* each statement is false. This is more than adequately pleaded.[12]

HumanN argues that its statements that no other product can "do what [HumanN's] technology does" are not actionable because they are mere "puffery." *See* Motion, at 17:1-12. This argument fails as a matter of law. "While product superiority claims that are vague or highly subjective often amount to nonactionable puffery, misdescriptions of specific or absolute characteristics of a product are actionable." *Southland*, 108 F.3d at 1145. "A specific and measurable advertisement claim of product superiority based on product testing is not puffery." *Id.*; *see also Castrol*, 987 F.2d at 946; *see also W.L. Gore & Assocs., Inc. v. Totes Inc.,* 788 F.Supp. 800, 809 (D. Del. 1992) (numerical comparison that product is seven times more breathable "gives the impression that the claim is based upon independent testing" and "is not a claim of general superiority or mere puffing"). Here, HumanN specifically references its *technology* in falsely advertising that no other product can do what its technology does. HumanN's statement can be read one of two ways: a direct claim that HumanN has tested its products against other products to reach this specific conclusion, or a strong implication that extensive product testing has revealed the unique superiority of HumanN's products. Either way, a reasonable consumer would no doubt be influenced by this convincing statement; this is not the type of ambiguous exaggeration that escapes enforcement under the Lanham Act.

ThermoLife specifically alleges the falsity of numerous advertising statements. HumanN cannot rewrite the federal pleading standard simply because it disagrees with ThermoLife's allegations.

---

[12]     HumanN argues that none of the challenged advertising statements are "literally false." *See* Motion, at 15:26. But even if one (or more) of HumanN's statements is "literally true but likely to mislead or confuse customers," it is still actionable. *Southland*, 108 F.3d at 1139.

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

11

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

**2.    ThermoLife has alleged that HumanN's false advertising statements actually deceive consumers or have a tendency to deceive or influence purchase decisions.**

Next, HumanN argues that ThermoLife's false advertising claim should be dismissed because "ThermoLife fails to state that anyone has been misled." (Motion, at 15:26-27.) Once again, HumanN's argument conveniently ignores controlling law and ThermoLife's burden at the pleading stage. As the Ninth Circuit reiterated just two years ago in a Lanham Act appeal decided in ThermoLife's favor: "A statement is material if it is **likely to influence** the purchasing decision." *ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 615 (9th Cir. 2016) (emphasis added). "[P]laintiffs are not required to present evidence that defendants' misrepresentation actually influenced consumers' purchasing decisions, but that it was likely to influence them." *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.,* 284 F.3d 302, 311-13 (1st Cir. 2002). Moreover, as HumanN itself acknowledges, "[w]hen a statement is literally false, the court **presumes** deception." (Motion at 7:3-4 (emphasis added) (citing *U-Haul Intern., Inc. v. Jartran, Inc.,* 793 F.2d 1034, 1041 (9th Cir. 1986)).) For that reason, ThermoLife need not prove that customers have actually been misled; a literally false statement made in the advertisement "necessarily" misleads. *See ThermoLife*, 648 F. App'x at 616.

**3.    ThermoLife has alleged injury or likelihood of injury as a result of the false statements.**

ThermoLife has also alleged actual and prospective harm. Again, ThermoLife has alleged that it sources and licenses the patent-protected nitrates and nitrite technology used in many of the top selling dietary supplements. This is the very technology over which HumanN falsely claims a monopoly. (*Id.* at ¶¶ 10, 114.) ThermoLife alleges that "HumanN competes with ThermoLife and with products sourced from ThermoLife in the emerging nitrate/nitrite supplementation market," and that, "[i]n competition with ThermoLife, HumanN is willfully and intentionally misleading consumers into purchasing HumanN's falsely marked, falsely advertised, and misbranded products." (*Id.* at ¶¶ 2, 13, 37.) ThermoLife alleges that HumanN's false advertisements, which convey that its competitive products are "unique, novel, and superior to other products on the

market," are "harmful to ThermoLife, ThermoLife's customers, ThermoLife's potential customers, and end-user consumers." (*Id.* at ¶ 38.)

HumanN is entitled to disagree with these allegations, but it is not entitled to challenge ThermoLife's allegations as "untrue" on a motion to dismiss.

### D.      ThermoLife has pleaded a viable claim for false marking.

HumanN's arguments directed at ThermoLife's false marking claim are more of the same: HumanN again relies on documents and information that is not part of the pleadings and it asks the Court to grant its motion to dismiss based on disputed factual issues. (Motion at 13-14.) ThermoLife does not dispute that false marking must be plead with particularity and, also, ThermoLife will eventually need evidence at trial that HumanN acted intentionally to deceive the public. But, here, as explained below, ThermoLife's detailed allegations are more than sufficient on both these points. HumanN's motion to dismiss simply ignores the well-plead allegations. Furthermore, the inadmissible documents that HumanN relies on to impermissibly challenge the veracity of ThermoLife's pleadings must be struck, but (even were the Court to consider them) HumanN's attorneys mislead the Court regarding what those documents actually show.

### 1.    ThermoLife's allegations establishing false marking of all HumanN products are sufficiently plead.

ThermoLife's Complaint alleges that in mid-2017, ThermoLife informed HumanN that HumanN's products were marked with patents that HumanN did not practice. (Complaint ¶¶ 59, 86.) After this meeting, HumanN took the affirmative step of removing three (of the six) patents that were listed on each of its products from the product's label. (Complaint ¶¶ 59, 86.) At least at the pleading stage, ThermoLife is certainly entitled to an inference that HumanN removed these three patents from its product labels because it agreed with ThermoLife's assessment: the products did not practice the patent claims. While this alone should be enough to establish false marking, ThermoLife's Complaint also alleges that, despite removing these three patents from each of its product labels, HumanN failed remove the now admittedly not-practiced patents from its website and on-line marketing. (Complaint ¶¶ 60-63, 87-89.) Indeed,

Keesmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

ThermoLife's Complaint includes pictures of each of these products displayed on HumanN's website with all six patents still listed on the product's labels. Certainly, this is sufficient evidence of scienter: HumanN continues to electronically falsely mark its products even after removing the patents from the product's actual labels.[13]

## 2. ThermoLife has also pleaded additional facts establishing the false marking of SuperBeets and BeetElite.

In addition to pointing out that HumanN has tacitly admitted that its products do not practice at least three of the patents that the products were marked with, ThermoLife's Complaint also explains why SuperBeets and BeetElite never practiced any of the patents listed on the product's labels. All of the patents that SuperBeets and BeetElite are currently marked with require among other things a "nitrite salt." (Complaint ¶¶ 63-72.) The patent specifications (which must explain to someone skilled in the art how to practice the invention) indicates that "nitrite salts" and "nitrites from vegetable sources" are two different things. (Complaint fn. 7.) And, it is well known by anyone skilled in the art that nitrite salts and/or nitrate salts are not found in vegetables. Moreover, two of the patents actually require "a nitrate salt", which cannot be found in vegetables either. Given this admission, neither SuperBeets nor BeetElite can possibly practice any of the patents; the only nitrite source in these products is beets (a vegetable source) which cannot contain the necessary "nitrite salt" to satisfy any of the claims of the patents falsely marked on the SuperBeets and BeetElite packaging. Obviously, HumanN knows this. (Complaint ¶ 82.) The named inventor on these patents is HumanN's co-founder. And, regardless, HumanN has been aware that it did not practice these patents since ThermoLife specifically informed it of this in mid-2017. (Complaint ¶¶ 59, 86.) For this reason, as well, HumanN's Motion must be denied.

## 3. ThermoLife has pointed to still more facts establishing that SuperBeets is still falsely marked.

ThermoLife also offered additional facts establishing that SuperBeets is falsely marked. ThermoLife had HumanN's products tested by an independent laboratory, twice. (Complaint ¶¶ 77, 79.) That testing revealed that SuperBeets does not contain sufficient

---

[13]     On the date of this filing, HumanN's website still intentionally falsely advertises that all of its products practice all six patents.

nitrites per serving (even if the nitrites were salts, which they are not) to practice two of the patents that are still listed on the product label: U.S. Patent No. 8,298,589 and U.S Patent 8,435,570. Both patents require a minimum nitrite salt dosage of 10mg per serving. (Complaint ¶¶ 66, 69.) SuperBeets contains just 7.45 milligrams of nitrites per serving. (Complaint ¶¶ 79.) Obviously, HumanN, as the manufacturer of this product is keenly aware of the product's contents (by law, it has to be). It follows then that HumanN knows that this product is falsely marked. (Complaint ¶ 82.)

**4. HumanN's unsupported lawyer argument regarding false marking must be struck and, regardless, HumanN's assertions are simply untrue.**

Oddly, in moving to dismiss ThermoLife's false marking claim, HumanN provides a certificate of analysis that it asserts is from its beet root supplier. The Court should simply ignore this whole line of argument.

Regardless, the entirety of HumanN's unsupported lawyer argument on page 13 is simply wrong. HumanN's lawyers contend that ThermoLife needed to test HumanN's products for sodium nitrite content before ThermoLife could determine if the products actually practiced the patents. ThermoLife didn't test HumanN's products for sodium nitrite because the products could not possibly have any sodium nitrite in them (unless, of course, they were illegally spiked with sodium nitrite). The only source of nitrites listed on the product labels is beet-root powder. It is well known in the art that beet-root powder does not contain nitrite (or nitrate) salts; thus, it is simply impossible that the products contain sodium nitrite (a nitrite salt). Inexplicably, HumanN's lawyers point to a certificate of analysis that HumanN allegedly obtained from its supplier for beet-root powder and they argue that since the certificate lists "Nitrites (as Sodium Nitrite)" the product must contain sodium nitrite. "Nitrites (as Sodium Nitrite)" though is simply a standard measure for testing nitrite content. The testing reported on the certificate of analysis compares the testing results to the standard for sodium nitrite; there is no sodium nitrite in HumanN's product (unless, again, the product was spiked and ingredients in the

product are falsely advertised). This is a blatant attempt to try and fool this Court, just as HumanN has fooled consumers. ThermoLife's claim for false marking is well-pleaded.

### 5. Human's argument that it may mark a product with patents that the product does not practice so long as the product practices one patent is legally wrong.

Finally, HumanN argues that ThermoLife's claims for false marking as alleged against HumanN's Neo40 product must fail because ThermoLife tacitly concedes that the Neo40 product practices one (of the six) patents that it is marked with. In support of this contention, HumanN *Sukumar v. Nautilus, Inc.*, 785 F.3d 1396, 1402 (Fed. Cir. 2015). *Sukumar* discusses standing; in no way does this case support or even address HumanN's argument. It is well-settled that a patentee can still be found liable for false marking when a product fails to practice each patent listed.[14]

### E. ThermoLife's claims are not preempted.

Lastly, HumanN moves to dismiss ThermoLife's false advertising claim to the extent that ThermoLife alleges that HumanN's products are falsely advertised as dietary supplements, because they are "misbranded" under the Food, Drug, and Cosmetic Act (the "FDCA"), 21 U.S.C. § 301 *et seq.* Every single case that HumanN relies on here is more than four-years old. On July 12, 2014, the United States Supreme Court decided *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 189 L. Ed. 2d 141 (2014). There, the Supreme Court held, "Neither the Lanham Act nor the FDCA in express terms, forbids or limits Lanham Act claims challenging labels that are regulated by the FDCA." Applying *Pom Wonderful*, the Ninth Circuit Court of Appeals held that claims, like the one ThermoLife brings here, are not preempted: "[W]hereas the FDCA protects public health by relying on the FDA's expertise, Lanham Act claims like ThermoLife's protect commercial interests by relying on the market expertise of competitors."

---

[14]    *See Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed.Cir.2005) ("When the statute [§ 292] refers to an 'unpatented article' the statute means that the article in question is not covered by at least one claim of each patent with which the article is marked.")(emphasis added); *see also Brinkmeier v. Graco Children's Prod. Inc.*, 684 F. Supp. 2d 548, 551 (D. Del. 2010) ("Court rejects Defendant's contention that no actionable mismarking can occur if the product at issue is covered by at least one claim of one of the patents listed."); *Hollander v. EUSA Pharma (USA), Inc.*, No. 2:10-CV-00492, 2010 WL 8971109, at *1 (E.D. Pa. Aug. 26, 2010)(finding that even if a product is "covered by one enforceable patent does not shield Defendant from liability under § 292(a) with respect to the two expired patents.").

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

*ThermoLife*, 648 F. App'x at 615. The Ninth Circuit explained further that claims of "misbranding" are expressly not preempted: "Although the FDCA expressly preempts state-law requirements that conflict with certain FDCA provisions, those provisions do not include section 343(a), which governs the misbranding of food through false and misleading labeling." *Id*. Since *Pom Wonderful* and *ThermoLife v. Gaspari*, courts across the country have held that false advertising claims that touch on FDCA labeling requirements are not preempted.[15] HumanN must defend the merits of ThermoLife's false advertising claim, this claim is not preempted.

## III.    CONCLUSION

For the foregoing reasons, the Court should deny HumanN's Motion to Dismiss. In the event that this Court concludes that ThermoLife's Complaint fails to adequately allege the facts needed to demonstrate standing or otherwise plead viable claims, ThermoLife requests leave to amend.

RESPECTFULLY SUBMITTED this 4th day of February, 2019.

KERCSMAR & FELTUS PLLC

By: *s/Greg Collins*
    Gregory B. Collins
    Molly Rogers
    7150 East Camelback Road, Suite 285
    Scottsdale, Arizona 85251

*Attorneys for ThermoLife International, LLC*

---

[15]    The Eleventh Circuit Court of Appeals recently held that a Lanham Act claim can lie even when the defendant has complied with all aspects of the FDCA's labeling requirements. *See Hi-Tech Pharm., Inc. v. HBS Int'l*, 2018 WL 6314282 (11 Cir. Dec. 4, 2018).

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Keresmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

## CERTIFICATE OF SERVICE

1

2    I hereby certify that on this 4th day of February, 2019, I electronically transmitted
the foregoing document to the Clerk's Office using the CM/ECF System for filing and
3    transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

4    Paul K. Charlton
Quintin H. Cushner
5    STEPTOE & JOHNSON LLP
201 East Washington Street, Suite 1600
6    Phoenix, Arizona 85004-2382
pcharlton@steptoe.com
7    qcushner@steptoe.com

8

9    Saul H. Perloff
NORTON ROSE FULBRIGHT US LLP
10   300 Convent Street, Suite 2100
San Antonio, TX 78205-3792
11   saul.perloff@nortonrosefulbright.com

12

13   Robert L. Rouder
NORTON ROSE FULBRIGHT US LLP
14   98 San Jacinto Blvd, Suite 1100
Austin, TX 78701-4255
15   robert.rouder@nortonrosefulbright.com

16

17   *Attorneys for Defendant NeoGenis Labs, Inc. d/b/a HumanN*

18

By: s/*Patricia S. Werner*
19

20

21

22

23

24

25

26

27

28