**Paul K. Charlton** (012449)
**Quintin H. Cushner** (027303)
**STEPTOE & JOHNSON LLP**
201 East Washington Street, Suite 1600
Phoenix, Arizona 85004-2382
pcharlton@steptoe.com
qcushner@steptoe.com
Telephone: (602) 257-5200

**Saul H. Perloff** (*pro hac vice*) (Tex. Bar. 00795128)
**NORTON ROSE FULBRIGHT US LLP**
300 Convent Street, Suite 2100
San Antonio, Texas 78205-3792
saul.perloff@nortonrosefulbright.com
Telephone: (210) 224-5575

**Robert L. Rouder** (*pro hac vice*) (Tex. Bar. 24037400)
**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701-4255
robert.rouder@nortonrosefulbright.com
Telephone: (512) 474-5201

**Attorneys for Defendant**
**NEOGENIS LABS, INC. d/b/a HUMANN**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ThermoLife International, LLC,<br><br>Plaintiff,<br><br>v.<br><br>NeoGenis Labs, Inc. d/b/a HumanN,<br><br>Defendant. | Case No. CV-18-2980-PHX-HRH<br><br>**DEFENDANT HUMAN POWER OF N COMPANY, F/K/A NEOGENIS LABS, INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS** |

Defendant NeoGenis Labs, Inc. ("HumanN"), offers this reply in support of its motion to dismiss (Doc. 24) Plaintiff ThermoLife International, Inc.'s ("ThermoLife") Complaint (Doc. 1) and in rebuttal to ThermoLife's Response (Doc. 30).

**I.     Introduction**

ThermoLife's Complaint, purporting to allege false patent marking and false advertising under § 43(a) of the Lanham Act, fails because ThermoLife lacks standing, and on the merits. Both statutes require claimants to allege *competitive* injuries. But ThermoLife

is not HumanN's competitor in the markets for HumanN's products. The Complaint does not allege ThermoLife participates in the NO Indicator Strips market in any capacity, and offers only labels but no *factual* allegations that it competes in the supplement or functional foods markets. Legal conclusions cannot carry ThermoLife's *factual* pleading burden.

As is plain on the record, ThermoLife sued because HumanN refused to license ThermoLife's patent. But such a refusal could only be actionable for patent infringement—an action ThermoLife already brought and abandoned. It does not give rise to a competitive injury needed for standing under these statutes, warranting dismissal of all claims.

ThermoLife's claims against HumanN's NO Indicator Strips also fail because the strips are the subject of pending patent applications, and because ThermoLife's own authority shows the strips accurately detect salivary NO. Neo40 also indisputably practices the listed patents, while SuperBeets and BeetElite practice at least the '999 Patent based on ThermoLife's own allegations. ThermoLife offers no allegations that any supposed *false* marking on these products had any competitive effect beyond their true patent markings—a fact fatal to its claims. *Sukumar v. Nautilus, Inc.*, 785 F.3d 1396, 1402 (Fed. Cir. 2015).

ThermoLife's Complaint should be dismissed.

## II.     ThermoLife Misstates the Standard of Review

A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Characterizing *Twombly* as "plaintiff-friendly," however, ThermoLife quotes the "no set of facts" language expressly rejected by the Supreme Court. *Compare* Response at 1 *with Twombly*, 550 U.S. at 561-63. Under *Twombly*, pleadings such as ThermoLife's Complaint that rely on "bald conclusions" reciting "labels and conclusions" rather than *facts* are "disfavored." *Austin v. State of Ariz.*, No. 08-cv-1222, 2008 WL 4368608, at *6 (D. Ariz. Sept. 22, 2008); *see also Young v. Dist. of Columbia*, 107 F. Supp. 3d 69, 75 n.6 (D.D.C. 2015) ("dismissal of cases on [Rule 12(b)(6)] motions is not 'disfavored' when the plaintiff fails to make 'factual allegations specific enough to raise a right to relief above the speculative level'") (quoting *Twombly*, 550 U.S. at 555).

1. ThermoLife admits patent marking claims must be pled with particularity. Response at 13; *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1310-11 (Fed. Cir. 2011). While it quibbles with the applicability of Rule 9(b) to false advertising claims based on purported fraud, *id.* at 8, n.10, ThermoLife offers no authority to contradict decisions of Courts in this District. *Pestube Sys., Inc. v. HomeTeam Pest Def., LLC.*, 05-cv-2832, 2006 WL 1441014, at *5 (D. Ariz. May 24, 2006); *Williams & Lake LLC v. Genesis Sys. LLC*, 17-cv-117, 2017 WL 6418937, at *7 (D. Ariz. Sept. 13, 2017). Here, Rule 9(b) applies to all claims.

"To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Maricopa Cnty. v. Office Depot, Inc.*, No. 2:14-cv-1372, 2014 WL 6611562, at *3 (D. Ariz. Nov. 21, 2014); *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018), cert. denied, 139 S. Ct. 640 (2018). ThermoLife's Complaint's conclusory allegations fail to satisfy Rule 9(b)'s heightened standard.

As in its Complaint, ThermoLife's Response offers no *facts* to support its conclusory allegations it either competes with HumanN, or suffered a competitive injury. Response at 5, 6 (Doc. 30). It does not allege it sells a product in competition with HumanN, or licenses its patents to any identified company selling a named product in competition with HumanN. It fails to allege any facts that any person was ever confused or deceived by HumanN's patent markings or other alleged advertising, or that ThermoLife ever lost a single dime of revenue *other* than from HumanN's refusal to pay it an extortionate licensing fee. Without such factual allegations, ThermoLife fails to meet its heightened pleading burden.

### III.   The Court May Take Judicial Notice of HumanN's Exhibits

The Court may consider HumanN's exhibits. A "court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment." *In re White Elec. Designs Corp. Sec. Litig.*, 416 F. Supp. 2d 754, 760 (D. Ariz. 2006). "[D]ocuments not attached to a complaint may be considered if no party questions their authenticity and the complaint relies on those documents." *Sitevoice, LLC v. Gyrus Logic, Inc.*, 2:14-cv-0883, 2014 WL 4722329, at *3 (D. Ariz. Sept. 23, 2014).

1  ThermoLife does not challenge the authenticity of any of HumanN's exhibits, notably including its extortionate demand in Ex. 1. Response at 1 n.1 & 3 n.6. ThermoLife concedes this Court may judicially notice ThermoLife's abandoned patent infringement action, as well as HumanN's patents and patent applications. *Id.* at 3 n.5 (Exs. 5, 8, & 13 (Doc. 24-7, -10, & -15)); *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002) (courts may judicially notice court records); *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 932 n.3 (Fed. Cir. 2014) (it is "well-established that a court may take judicial notice of patents or patent applications"); *Cornucopia Prods., LLC v. Dyson, Inc.*, 881 F. Supp. 2d 1086, 1090 (D. Ariz. 2012) (judicial notice of patents and their file histories).

ThermoLife's extortion email, Ex. 6 (Doc. 24-8), is referenced, obliquely, in its pleading. Complaint ¶ 19 ("Defendant has been placed on notice that its actions are damaging to ThermoLife, which it knows has a place of business in this District.").[1] ThermoLife offers its own spin on the Sept. 3, 2018 email from Mr. Kramer, Response at 3, n.6 (Doc. 30), which came less than three weeks before ThermoLife filed suit. The email threatened this suit if HumanN did not license the '140 Patent, providing key background information to understand this case. *Taylor v. Adam Silver of McCalla Raymer, LLC*, No. 1:08-cv-3802, 2009 WL 10700358, at *2 (N.D. Ga. Apr. 6, 2009) (considering documents "for the purpose of understanding the background for Plaintiff's complaint and response"), report and recommendation adopted, 2009 WL 10700326 (N.D. Ga. May 7, 2009).

The Court may also take judicial notice of press releases. Exs. 1 & 7. *Arce v. Douglas*, 793 F.3d 968, 975 & n.3 (9th Cir. 2015); *In re White Elec.*, 416 F. Supp. 2d at 760 (D. Ariz. 2006) (press releases "are capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned"). Similarly, both newspaper and scientific journal articles are routinely judicially noticed. *Ritter v. Hughes Aircraft Co.*,

---

[1] ThermoLife misunderstands FED. R. EVID. 408. Response at 2, n.3. Under Rule 408, offers of compromise may not be used to prove amounts or validity of disputed claims; but they *may* be used for other purposes. *Samsung Elecs. Co., Ltd v. Quanta Comp., Inc.*, No. 00-cv-4524, 2006 WL 2850028, at *5 (N.D. Cal. Oct. 4, 2006) (denying motion to exclude because "some evidence regarding the prelitigation negotiations may be admissible").

58 F.3d 454, 458-59 (9th Cir. 1995) (affirming district court's taking of judicial notice of newspaper articles); *Harris v. Foulk*, 591 Fed. Appx. 551, 552 n.1 (9th Cir. 2015) (judicially noticing newspaper articles); *Miles, Inc. v. Scripps Clinic & Research Found.*, 951 F.2d 361, 1991 WL 276450, at *1 (9th Cir. Dec. 23, 1991) (affirming judicial notice of patent and article in science magazine); *In re Thoratec Corp. Secs. Litig.*, No. 04-cv-3168, 2006 WL 1305226, at *4 (N.D. Cal. May 11, 2006) (medical journal).

ThermoLife alleges "[a]s the manufacture and seller of SuperBeets and BeetElite, HumanN is well aware of the type of nitrites and nitrates in each of the products as well as the quantity of nitrites and nitrates included in each of its products." Compl. ¶ 82; Response at 15. This is correct, because HumanN receives Certificates of Analysis, including Ex. 12. Certificates of Analysis are routinely issued in the industry, *United States v. Parnell,* 723 F. Appx. 745, 747 (11th Cir. 2018) (per curiam); *Betco Corp., Ltd. v. Peacock*, 876 F.3d 306, 308 (7th Cir. 2017), and the FDA mandates that HumanN maintain these documents. 21 C.F.R. §§ 110.80 (applicable to SuperBeets and BeetElite), 111.75 (Neo40). Because there is no dispute as to its authenticity, and because it is available for FDA inspection, Ex. 12 (Doc. 24-14) may be considered. *Cf.*, *DiLorenzo v. Edgar*, No. 03-cv-841, 2004 WL 609374, at *2 (D. Del. Mar. 24, 2004) (the "court may take judicial notice of the contents of documents required by law to be filed, and actually filed, with federal or state officials").

## IV.   ThermoLife Lacks Standing

"Standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record." *Pestube* 2008 WL 11448028, at *3; *Escobar v. Brewer*, 461 F. Appx. 535, 535-36 (9th Cir. 2011) (conclusory allegations insufficient).

### A.   ThermoLife Lacks Standing to Brings its False Patent Marking Claims

To show standing under 35 U.S.C. § 292(b), a plaintiff must allege it suffered a competitive injury caused by the false marking. *Sukumar*, 785 F.3d at 1400 n.3. "[A]n injury is only a 'competitive injury' if it results from competition . . . ." *Id.* at 1402.

*Sukumar* is controlling, and requires ThermoLife to *directly* compete in the NO Indicator Strip field, or allege false marking prevented it from directly competing. 785 F.3d

at 1402.[2] ThermoLife's Complaint fails to allege such facts, and its Response admits "it does not sell nitric oxide indicator strips or otherwise directly compete (or plan to compete) in the indicator strip space." Response at 7 (Doc. 30). Because it has not pled a competitive injury, its patent marking claims with respect to HumanN's NO Indicator Strips fail.

ThermoLife alleges no facts which plausibly (much less with particularity) state a competitive injury with respect to the patent markings on Neo40, BeetElite, or SuperBeets. Instead, it baldly asserts, without alleging facts, that ThermoLife is a "direct competitor" and suffered a "competitive injury." Compl. ¶¶ 37, 131, 138. ThermoLife's labels are not merely conclusory and unsupported, but contrary to a recent ruling against it. In *ThermoLife Int'l, LLC v. Myogenix Corp.*, No. 13-cv-651, 2017 WL 1235766, at *7 (S.D. Cal. Apr. 4, 2017), the Court found that ThermoLife does not itself practice its patents, and "only list[s] one marketed product, sales of which never amounted to more than 300 units."

ThermoLife claims several courts allowed a patent marking case to proceed based on conclusory labels of injury. In fact, each case *rejected* this argument. *McCabe v. Floyd Rose Guitars*, No. 10-cv-581, 2012 WL 1409627 (S.D. Cal. Apr. 23, 2012), dismissed a patent marking claim because the plaintiff failed to allege a competitive injury:

> McCabe alleges that he "has been unable to efficiently reach license agreements with licensees for his patents due to, at least in part, Defendants' false marking activities," . . . that he "has been precluded from commercializing his tremolo systems due to, at least in part, Defendants' false marking activities." Other than these bare-bone allegations that McCabe was unable to procure licensees "at least in part" due to Defendants' false marking, McCabe nowhere alleges facts supporting these conclusory statements, however.

*Id.* at *7. The *McCabe* pleading had more detail than ThermoLife's. It "spill[ed] much ink on how several other entities were allegedly defrauded when they entered into license agreements with Defendants," but did "not allege that but for entering into those fraudulent

---

[2] Erroneously claiming *Sukumar* is not "binding authority," ThermoLife argues Ninth Circuit precedent controls what constitutes a "competitive injury" for a § 292(b) claim. Response at 4. But this Court applies Federal Circuit authority, not Ninth Circuit precedent, to this patent law issue. *Heathcote Holdings Corp., Inc. v. Crayola LLC*, No. 10-cv-342, 2010 WL 5149343, at *1 (N.D. Ill. Dec. 10, 2010) ("Federal Circuit law applies if a procedural matter 'bears on an issue that 'pertains to or is unique to patent law.'")

DOCUMENT PREPARED ON RECYCLED PAPER

1  agreements, those licensees would have entered into license agreements with McCabe." *Id.*
2  McCabe's complaint also referenced a "letter he received from a third-party manufacturer,"
3  indicating it was entering a license with defendant rather than McCabe, but did "not show
4  that McCabe lost this licensing opportunity due to Defendants' false marking." *Id.* Despite
5  more detailed allegations than presented by ThermoLife, the court dismissed, finding "that
6  McCabe has not alleged a 'competitive injury' as is required by § 292." *Id.* at *8.

7  *Seirus Innov. Access., Inc. v. Cabela's Inc.*, 100 U.S.P.Q.2d 1953, 2011 WL
8  6400630, at *4 n.1 (S.D. Cal. 2011), dismissed false marking claims, holding "Cabela's has
9  not shown a competitive injury as required." Like ThermoLife, Cabela's conceded it was
10  not in competition with Serius. *Id.* at *4 ("We do not manufacture these products."). And
11  *ArtSkills, Inc. v. Royal Cons. Prods., LLC*, No. 3:17-cv-1552, 2018 WL 3520431 (D. Conn.
12  July 20, 2018), dismissed a marking claim for lack of standing due to claimant's failure to
13  allege a competitive injury. *Id.* at *7 (claimant "'merely states that competitive injury has
14  occurred, without offering any factual details or specific examples to support the claim'").
15  The "conclusory" "allegations of competitive injury" mirror ThermoLife's own allegations:

16  - "RCP has suffered, and is likely to continue to suffer, competitive injury because of Artskills' false statements relating to patents."
17  
18  - "Artskills' false statements . . . have discouraged and deterred parties from purchasing and/or using products from RCP, and are likely to continue to discourage and deter parties."
19  

20  *Id.* at *8 (citations omitted; ellipses in original). "Rather than support the allegation of
21  competitive injury with factual allegations sufficient to indicate that these injuries actually
22  occurred, RCP has relied on vague assertions. There is no indication of what 'competitive
23  injury' RCP has suffered or which parties have been 'discouraged and deterred' from
24  'purchasing and/or using products from RCP.'" *Id.* The court accordingly dismissed. *Id.*
25  ThermoLife lacks standing to bring its marking claims; they should be dismissed.

26  **B.     ThermoLife Lacks Standing to Brings its Lanham Act Claims**

27  To have standing to bring a false advertising claim under § 43(a) of the Lanham Act,
28  a plaintiff must allege a cognizable injury proximately caused by the defendant's alleged

1  conduct, and must show its claim falls within the "zone of interest" of the statute. *Lexmark*
2  *Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129-32 (2014). To come within
3  § 43(a)'s zone of interest, a plaintiff must "allege an injury to a commercial interest in
4  reputation or sales." *Id.* Thus, "a plaintiff suing under § 1125(a) ordinarily must show
5  economic or reputational injury flowing directly from the deception wrought by the
6  defendant's advertising; and that that occurs when deception of consumers causes them to
7  withhold trade from the plaintiff." *Id.* at 133. Competition need not be "direct," although
8  this showing "is generally not made when the deception produces injuries to a fellow
9  commercial actor that in turn affect the plaintiff." *Id.* at 133-34; *see also Bobbleheads.com,*
10 *LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087, 1097 (S.D. Cal. 2017).

11       A plaintiff must allege a *competitive* injury; a consumer thus lacks standing to bring
12 a Lanham Act false advertising claim. *Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir. 1995)
13 ("As consumers, [plaintiffs] have alleged neither commercial injury nor competitive
14 injury"). In *Frompovicz v. Niagara Bottling, LLC*, 313 F. Supp. 3d 603, 610 (E.D. Pa. 2018),
15 for example, the parties competed in the sale of bottled water. Plaintiff alleged defendants'
16 labeling of their water as spring water was literally false, and alleged specific loss of sales.
17 *Id.* at 610 ("Plaintiff alleges that the misleading labels depressed his own sales by falsely
18 equating his product with Defendant Land's"); *see also Obesity Research Inst. v. Fiber*
19 *Research Int'l*, 165 F. Supp. 3d 937, 947 (S.D. Cal. 2016) (plaintiff alleged it was "injured
20 in its efforts to sell Propol because Obesity Research is 'unfairly passing off its sub-
21 standard, adulterated, unrefined Konjac root product as the same or substantially the same
22 as that studied in clinical trials of' Propol).

23       *Merck Eprova AG v. Brookstone Pharms., LLC*, 920 F. Supp. 2d 404 (S.D.N.Y.
24 2013), like *Lexmark*, concerned an indirect competitor which sufficiently alleged injury
25 from the defendant's false advertising. Brookstone, later known as Acella, marketed
26 products it claimed were made with L-methylfolate, a medical food patented by Merck
27 under the name "Metafolin®." Brookstone/Acella had been sued in a series of cases by
28 Merck's exclusive licensee (and its sublicensee). *Sciele Pharma, Inc. v. Brookstone*

*Pharms., LLC*, No. 1:09-cv-3283, 2011 WL 3844891 (N.D. Ga. Aug. 30, 2011); *Pamlab, L.L.C. v. Brookstone Pharms., LLC*, No. 09-cv-7434, 2010 WL 11541920 (E.D. La. Feb. 23, 2010). Because Brookstone/Acella's continued false advertising of its products in competition with products formulated with Metafolin® was causing it a competitive injury, Merck enjoyed standing. *Merck*, 920 F. Supp. 2d at 416.

Citing *Merck*, ThermoLife claims the alleged false marking of HumanN's products "harmed ThermoLife's ability to license its patents and the sales of its licensed products." Response at 7. Though citing the Complaint ¶¶ 44-49, these paragraphs say nothing about ThermoLife's "ability to license its patents" or the sale of licensed products. *Nowhere* in the Complaint does ThermoLife allege its "ability to license its patents" was impacted. There is no reference in the Complaint to any *licensees*, or products made under licenses.

ThermoLife now admits its intent in bringing this case was to secure "licensing fees." Response at 6; *see also* Ex. 6 (Doc. 24-8) ("Unfortunately for you Joel, YOU and HumanN do not get to name the price to practice our technology. We say the price, and either you agree, or we sue you. That is all.") But loss of a licensing fee from HumanN is not a *competitive* injury. A *vendor*, like a consumer, does not have standing for a false advertising claim against a customer who rejects its offer. Because ThermoLife fails to plead facts to show it falls in the Lanham Act's zone of interest, its claims must be dismissed.[3]

## V.   ThermoLife's Patent Marking Claims Fail on the Merits

ThermoLife pled that HumanN's NO Indicator Strips are falsely marked as "patent-pending" based on its assumption that the patent application deemed abandoned in 2015 was the *only* application that applied. Compl. ¶¶ 4, 46-47. As Ex. 8 (Doc. 24-10) illustrates, however, ThermoLife's assumption was wrong. HumanN filed three applications with the

---

[3] *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228 (2014), miscited by ThermoLife, held Lanham Act claims are not precluded because false advertising involves a product regulated by the FDA. But HumanN never argued preclusion, and *POM* does *not* hold a private party can enforce the FDCA's misbranding provisions, 21 U.S.C. § 343(a)(1). The FDCA can only be enforced by the federal government. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 352 (2001) (citing 21 U.S.C. §337 (a)). ThermoLife's attempt to fill a role unique to federal agencies, Compl. ¶¶ 116-124, necessarily fails.

DOCUMENT PREPARED ON RECYCLED PAPER

USPTO, each entitled: "Method for testing nitric oxide based supplements, nutritionals, cosmetics, drugs and devices to determine no efficacy." ThermoLife admits these documents may be considered, Response at 3, n.5, but fails to address them. Its marking claim based on the NO Indicator Strips fails on these dispositive facts.

HumanN also demonstrated that Neo40 is formulated with 20 mg of sodium nitrite, Ex. 13, thus satisfying the claims of the '589, '570, and '999 Patents. Again, ThermoLife admits that Ex. 13 (Doc. 24-15) may be considered by the Court, and offers no argument, explanation, or citation to the Complaint to demonstrate that Neo40 is not properly marked.[4]

ThermoLife fails to allege plausibly, let alone with particularity, that HumanN had any intent to deceive in marking SuperBeets and BeetElite with the '999 Patent. *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005) (§ 292 does not impose "strict liability for mismarking"). To satisfy Rule 9(b), "the pleadings [must] allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Exergen v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009). "The bar for proving deceptive intent [in false marking cases] ***is particularly high***," because "the statute requires that the false marker act for the purpose of deceiving the public, a purpose of deceit, rather than simply knowledge that a statement is false, is required." *Fasteners for Retail Inc. v. Andersen*, No. 11-cv-2164, 2011 WL 5130445, at *6 (N.D. Ill. Oct. 28, 2011) (citations omitted, emphasis added). Based on the '999 Patent itself, and as demonstrated by ThermoLife's testing, these products practice the Patent.

ThermoLife alleges the '999 Patent claims include a threshold of 1 mg of a nitrite salt, Compl. ¶ 72. The Patent provides "[t]he active ingredients may comprise . . . beetroot," Doc. 1-2, page 61; *see also* Compl. ¶ 58 (labeling shows beetroot powder formulation). ThermoLife claims testing showed that samples of SuperBeets had 1.85 and 7.45 mg of

---

[4] Alleging HumanN removed three patents from Neo40 following notice, ThermoLife claims it is entitled to a "presumption" Neo40 had been falsely marked. Response at 13. The opposite is true. The *removal* of a challenged marking from a product upon notice shows a defendant *lacked* improper motive to deceive. *Pub. Patent Found., Inc. v. GlaxoSmithKline Cons. Hlthcare, L.P.*, 801 F. Supp. 2d 249, 265 (S.D.N.Y. 2011) (prompt removal of expired patents upon notice "militate against an intent to deceive the public").

nitrite, while samples of BeetElite had 5.47 and 15 mg of nitrite—each result above the 1 mg threshold. Compl. ¶¶ 76-77, 79-80. ThermoLife admits it did not test these products for sodium nitrite or any other nitrite salt, but insists through sheer *ipse dixit* that "beet-root powder does not contain nitrite (or nitrate) salts." Response at 15. This contradicts the '999 Patent, and fails to plausibly claim that the products do not practice this Patent.

Because BeetElite and SuperBeets are properly marked with the '999 Patent, ThermoLife must plead facts to show a *falsely* marked patent could have had a competitive impact. *Sukumar*, 785 F.3d at 1402 ("a potential competitor must show that the falsely marked patents deterred market entry, but that—for some reason —the properly marked patents did not deter market entry"). ThermoLife ignores this holding, citing instead two district court cases decided years before *Sukumar*. Response at 16, n.14. ThermoLife fails to allege that a false marking had any competitive impact, and its claims fail.

## VI.   ThermoLife's Remaining Claims Fail

ThermoLife's Lanham Act claims are largely based on its marking claims, and necessarily fail. Its claim that the NO Indicator Strips "just doesn't work," Compl. ¶¶ 4, 51, is contradicted by the article it cited to support it. Ex. 2 (Doc. 24-4) ("these test strips appear to measure salivary NO2"). ThermoLife's Response fails even to address *Clodfelter et al*.

ThermoLife's characterization of HumanN's ads as claiming "that it is the only company that can sell Nitric Oxide supplementation technology," Compl. ¶¶ 5, 46, and "has the only method to test 'if you are N-O [Nitric-Oxide] deficient,'" *id*. ¶ 44, fail because the actual ads make no such claims, *id*. ¶¶ 45, 48, and ThermoLife otherwise pleads no *facts* to show that HumanN actually made these claims. ThermoLife's contention that HumanN's Patents do not protect "patented Nitric Oxide technology" Compl. ¶¶ 5, 8, 54, 83, 91-100, is silly; as set forth in the Motion and in the Patents themselves, the '589, '570 and '999 Patents are rooted in and practice NO technology. What is left of ThermoLife's claims is a ridiculous attempt to spin an homage to Nobel Prize winners (including Dr. Bryan's mentor), and efforts to elevate obvious puffery to a claim of "*specific* and *measurable*" superiority, which is more than the words of the ads can bear. Response at 11.

1  February 21, 2019               NORTON ROSE FULBRIGHT US LLP
2                                  Saul Perloff
                                   Robert Rouder
3
                                   STEPTOE & JOHNSON LLP
4                                  Paul K. Charlton
                                   Quintin H. Cushner
5
6                                  By:  /s/Robert Rouder
7                                       Robert Rouder
                                   *Attorneys for Defendant*
8                                  *NeoGenis Labs, Inc. d/b/a HumanN*

DOCUMENT PREPARED
ON RECYCLED PAPER

- 12 -
DEFENDANT HUMANN'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2019, a copy of the foregoing document was electronically transmitted for filing via the CM/ECF system for the District of Arizona which will send a Notice of Electronic Filing to all CM/ECF registrants.

By: */s/Dana Thompson*
Dana Thompson
Employee of Norton Rose Fulbright US LLP