IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thermolife International, L.L.C.,<br><br>                          Plaintiff,<br><br>   vs.<br><br>NeoGenis Labs, Inc., d/b/a HumanN,<br><br>                          Defendant. | No. 2:18-cv-2980-HRH |

# O R D E R

### Motion to Dismiss

Defendant moves to dismiss plaintiff's complaint.[1] This motion is opposed.[2] Oral argument was requested and has been heard.

### Background

Plaintiff is ThermoLife International, LLC. Defendant is NeoGenis Labs, Inc. d/b/a HumanN. Defendant contends however that it is now known as the Human Power of N Company.

---

[1]Docket No. 24.

[2]Docket No. 30.

Plaintiff was founded in 1998 by Ron Kramer.[3] Plaintiff alleges that it "is a world leader in the use and development of nitrate technology" and that it "holds several patents related to the use of amino acids in combination with nitrates to increase performance."[4] Plaintiff alleges that it is "the exclusive licensee of U.S. Patent No. 9,180,140 ('the '140 Patent')," which "protects a method of administering nitrate or nitrite to humans in order to non-therapeutically cause a reduced oxygen uptake during exercise."[5]

Plaintiff alleges that "[d]efendant is a direct competitor of ThermoLife in the sale of nitrite and nitrate technology."[6] Plaintiff alleges that defendant was "formed in 2009" and that "Joel Kocher, Dr. Nathan Bryan, [and] Janet Zand are all co-founders of" defendant.[7]

---

[3]Complaint at 7, ¶ 21, Docket No. 1.

[4]Id. at ¶¶ 24-25.

[5]Id. at 8, ¶¶ 33-34. In 2016, plaintiff filed an infringement suit against defendant, claiming that defendant infringed claims 1 and 25 of the '140 Patent. Case No. 2:16-cv-2070-PHX-GMS. Shortly after it was filed, the infringement case was "stayed pending the final outcome of the PTO's reexamination of the '140 Patent." Docket No. 12 in Case No. 2:16-cv-2070-PHX-GMS. The case was dismissed on January 5, 2018 pursuant to a notice of voluntary dismissal. Docket No. 22 in Case No. 2:16-cv-2070-PHX-GMS. On a Rule 12(b)(6) motion to dismiss, the court may "consider . . . 'matters properly subject to judicial notice.'" Hicks v. PGA Tour, Inc., 897 F.3d 1109, 1117 (9th Cir. 2018) (quoting Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010)). The court takes judicial notice of the filings in the infringement case. See Harris v. Cty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citation omitted) (court "may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts").

[6]Complaint at 9, ¶ 37, Docket No. 1.

[7]Id. at 10, ¶ 39.

Plaintiff alleges that defendant is falsely marking its N-O Indicator Strips product as "patent pending" and also falsely advertising the N-O Indicator Strips as patent pending."[8] According to defendant's advertising, the N-O Indicator Strips "are a simple way to see if you're getting enough dietary nitrate through the foods that you eat."[9] Plaintiff alleges that defendant's "Nitric Oxide Indicator Strips do not enjoy patent protection and there is no patent pending related to this technology."[10] Plaintiff alleges that "[i]n fact, on August 13, 2013, HumanN's Dr. Nathan Bryan applied for a patent for a 'method of determining the level of nitric oxide (NO) or nitrite (NO2-)" but that "[t]he United States Patent Office rejected all 35 proposed patent claims."[11]

Plaintiff also alleges that "[c]ontrary to [defendant's] false claims, it is well-settled that you cannot determine whether an individual is 'deficient in N-O [Nitric Oxide]' and/or 'getting sufficient Nitric Oxide activating nutrients through [his] diet' simply by testing [his] saliva."[12] Plaintiff alleges that the 2015 Clodfelter study tested defendant's N-O Indicator Strips, along with other similar products, and concluded that "'[t]here is no correlation

---

[8]Id. at 12, ¶ 47; 29, ¶ 127.

[9]Id. at 11, ¶ 45.

[10]Id. at 11-12, ¶ 46.

[11]Id. at 12, ¶ 46.

[12]Id. at 13, ¶ 50.

between plasma NO2- and salivary NO3-. . . . Our results argue against the use of salivary NO2- as a marker for NO bioavailability.'"[13]

Plaintiff alleges that defendant is also falsely marking three of its other products, BeetElite, SuperBeets, and Neo40. Plaintiff alleges that defendant formerly "list[ed] six patent numbers" on the labels of these products but that in mid-2017, defendant removed three of the patent numbers because the products never practiced these patents.[14] Plaintiff alleges, however, that defendant's "website, Amazon.com, and countless other websites on the internet where consumers go to actually purchase the product, still mislead consumers by showing all six patent numbers."[15]

As for the three patents still listed on the products' labels, the '589, '570, and '999 patents, plaintiff alleges that BeetElite and SuperBeets "do not practice" any of these patents.[16] Plaintiff alleges that all three patents "require a 'nitrite salt' to practice the patented inventions" but that defendant "is well aware that its SuperBeets and BeetElite products do not contain a nitrite salt[.]"[17] The labels for defendant's products indicate that

---

[13] Id. at 13-14, ¶¶ 50-52

[14] Id. at 15, ¶ 59; 19-20, ¶¶ 85-86.

[15] Id. at 15, ¶ 60; 20, ¶ 87.

[16] Id. at 16, ¶ 63.

[17] Id. at 17, ¶ 73.

they use beetroot[18] and plaintiff alleges that "[t]he patent[] specifications for each of the patents marked on [defendant's] products all indicate that 'nitrate salts' and nitrites from vegetable sources are two different things."[19]

Plaintiff further alleges that

> even if the nitrites in the BeetElite and SuperBeets products could be considered 'nitrite salts' (which they cannot), the products would still also be falsely marked, falsely advertised, misbranded, and prohibited for sale in interstate commerce because they are under-dosed (i.e., they fail to include sufficient quantity of nitrites of any sort to practice the patented inventions).[20]

Plaintiff alleges that it did laboratory testing on the BeetElite and SuperBeets products in 2016 and 2018 and that both tests showed that the products contained an insufficient amount of nitrites to practice the '589 and '570 patents.[21] Plaintiff also alleges that defendant's "Neo40 products cannot and do not practice the patents that Neo40 is marked with."[22]

Plaintiff alleges that defendant is also falsely advertising that the BeetElite, SuperBeets, and Neo40 products "contain 'patented Nitric Oxide technology.'"[23] Plaintiff

---

[18] Id. at 15, ¶ 58; 19, ¶ 85.

[19] Id. at 17 n.7.

[20] Id. at 17, ¶ 74.

[21] Id. at 17-18, ¶¶ 75-81.

[22] Id. at 20, ¶ 89.

[23] Id. at 21-22, ¶¶ 91-95.

alleges that defendant's "claims that its products rely on patented technology for the production of Nitric Oxide is directly contrary to the United States Patent Office's decision that [defendant's] co-founder is not entitled to any patent claims for 'generating and/or increasing levels of Nitric Oxide.'"[24]

Plaintiff also alleges that defendant is falsely advertising that its employees or founders have won a Nobel Prize for research related to Nitric Oxide.[25] For example, plaintiff alleges that defendant makes the following statement on its website:

> [o]ur research on Nitric Oxide first began with the discovery of its unique impact on cardiovascular health. Its immense importance as a biological signaling molecule resulted in the awarding of the Nobel Prize in 1998. Realizing that the discovery of Nitric Oxide had immense potential, it didn't take long for our interest in N-O to become our passion.[26]

Plaintiff alleges that defendant had nothing to do with the 1998 Nobel Prize to which it refers.[27] Plaintiff alleges that defendant "falsely advertises itself as a Nobel Prize winner in order to falsely convey to consumers that its owns a monopoly on 'patented Nitric Oxide technology.'"[28]

---

[24] Id. at 23, ¶ 99.

[25] Id. at 25-26, ¶¶ 101-108.

[26] Id. at 25, ¶ 102.

[27] Id. at 26, ¶¶ 106-108.

[28] Id. at 26, ¶ 109.

Plaintiff alleges that defendant also falsely advertises that it is the only company "that can practice 'patented N-O platform technology.'"[29] Plaintiff alleges that this is a false statement because there are many other dietary supplements that "practice Nitric Oxide technology[,]" including products that use Creatine Nitrate which is "supplied by" plaintiff.[30]

Finally, plaintiff alleges that defendant is falsely advertising all of its products as Foods or Dietary Supplements.[31] Plaintiff alleges that this means defendant's products are misbranded because their labels contain false or misleading information.[32]

Plaintiff commenced this action on September 20, 2018. Plaintiff asserts three causes of action in its complaint. In its first cause of action, plaintiff asserts false marking claims pursuant to 35 U.S.C. § 292. In its second cause of action, plaintiff asserts Lanham Act false advertising claims. And, in its third cause of action, plaintiff asserts common law unfair competition claims.

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, defendant now moves to dismiss plaintiff's complaint.

---

[29]Id. at 26-29, ¶¶ 110-115.

[30]Id. at 28, ¶ 114.

[31]Id. at 28, ¶ 116.

[32]Id. at 28-29, ¶¶ 116-121.

Discussion

"'To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Zixiang Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). "The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully." Id. "'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 678). "[T]he complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" In re Rigel Pharmaceuticals, Inc. Securities Litig., 697 F.3d 869, 875 (9th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff." Adams v. U.S. Forest Srvc., 671 F.3d 1138, 1142-43 (9th Cir. 2012). "However, the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations." In re Tracht Gut, LLC, 836 F.3d 1146, 1150 (9th Cir. 2016).

"When ruling on a Rule 12(b)(6) motion, if 'matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.'" Hicks, 897 F.3d at 1117 (quoting Fed. R. Civ. P. 12(d)). "The 'pleadings' include more than just the complaint." Id. The court may "consider 'exhibits attached to the Complaint or matters properly subject to judicial notice.'" Id. (quoting Daniels-Hall, 629 F.3d at 998). "Moreover," the court "'may also consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" Id. (quoting Northstar Fin. Advisors Inc. v. Schwab Invs., 779 F.3d 1036, 1043 (9th Cir. 2015)). Defendant has offered thirteen exhibits in support of its motion to dismiss and argues that the court can consider all of them without converting the instant motion into a motion for summary judgment.

Exhibit 1 is an October 12, 1998 press release about the Nobel Prize being awarded to three individuals for "their discoveries concerning 'nitric oxide as a signaling molecule in the cardiovascular system.'"[33] Defendant argues that the court could take judicial notice of this exhibit, but there is no reason for the court to do so. Plaintiff has alleged that "[t]he Nobel Prize" at issue in this case "was awarded in 1998 to Robert Francis Furchgott, Louis J. Ignarro, and Ferid Murad for their discoveries concerning nitric oxide as a signaling

---

[33]Exhibit 1, Declaration of Robert Rouder [etc.], appended to Defendant Human Power of N Company, f/k/a Neogenis Labs, Inc.'s Motion and Memorandum in Support of Motion to Dismiss Plaintiff Thermolife International, LLC's Complaint, Docket No. 24.

molecule in the cardiovascular system."[34]  The court assumes this allegation is true for purposes of the instant motion.

Exhibit 2 is a copy of the Clodfelter study.  The court may consider this exhibit without converting the instant motion into a motion for summary judgment because plaintiff referred to this study in its complaint.

Exhibit 3 is an excerpt of a May 18, 2009 Sports Illustrated article that mentions plaintiff's founder, Ron Kramer.  Defendant argues that the court can take judicial notice of this article but there is no need for the court to do so because this article is irrelevant to the issues raised in the instant motion.

Exhibit 4 is an excerpt of an April 11, 2004 newspaper article about the Balco steroid investigation.  Defendant argues that the court can take judicial notice of this article but there is no need for the court to do so because it is irrelevant to the issues raised in the instant motion.

Exhibit 5 is the docket sheet from the infringement case that plaintiff filed against defendant, which is mentioned above in footnote 5.  As indicated there, the court has taken judicial notice of documents filed in the infringement case.

Exhibit 6 is a September 3, 2018 email that Kramer sent to Joel Kocher and others in an attempt to get defendant to license plaintiff's patents.  Defendant argues that the court can consider the email because it provides key background information about this case.  But, this

---

[34]Complaint at 26, ¶ 106, Docket No. 1.

email is irrelevant to the issues in raised in the instant motion and the court has not considered it in deciding the instant motion.

Exhibit 7 is a September 24, 2018 press release announcing the filing of this lawsuit. Defendant argues that the court could take judicial notice of this exhibit, but there is no need for the court to do so because this exhibit is irrelevant to the issues raised in the instant motion.

Exhibit 8 consists of three patent application receipts. The parties agree that the court can take judicial notice of this exhibit as the documents contained therein are public records of the USPTO. The court takes judicial notice of Exhibit 8.

Exhibits 9 and 10 are excerpts of scientific articles. Defendant argues that the court can take judicial notice of these articles. Defendant offers the articles to support its contention that "[s]aliva's role in N-O synthesis is well-established in research."[35] "But a court may not take judicial notice of a fact that is 'subject to reasonable dispute.'" Lee v City of Los Angeles, 250 F.3d at 689, 668 (9th Cir. 2001) (quoting Fed. R. Evid. 201(b)). The court has no way of determining at this point whether the fact for which defendant offers these articles is or is not subject to reasonable dispute. The court declines to take judicial notice of Exhibits 9 and 10.

---

[35]Defendant Human Power of N Company f/k/a Neogenis Labs, Inc.'s Motion . . . to Dismiss [etc.] at 12, n.3, Docket No. 24.

Exhibit 11 is a letter to the editor written by Dr. Bryan about the potential use of salivary nitrate as a marker of NO status in humans. Defendant argues that the court can take judicial notice of this exhibit. Defendant offers this letter because it contains a statement by Dr. Bryan that "[a]s a diagnostic fluid, saliva offers a number of logistical and practical advantages."[36] The court has no way of determining at this point whether this statement is a "fact" or an "opinion." The court declines to take judicial notice of Exhibit 11.

Exhibit 12 is a Certificate of Analysis for a product called Neo Dry Blend. Defendant argues that the court can take judicial notice of this exhibit because there is no dispute as to its authenticity and the FDA requires defendant to maintain documents such as this. The court takes judicial notice of Exhibit 12.

Exhibit 13 is a copy of the '823 patent. The parties agree the court may take judicial notice of this exhibit. The court takes judicial notice of Exhibit 13.

Turning then to the merits of defendant's motion to dismiss, defendant first argues that plaintiff's false marking and false advertising claims should be dismissed for lack of standing. The false marking statute "provides a private right of action to enforce § 292(a) to any 'person who has suffered a competitive injury as a result of a violation of this section.'" Sukumar v. Nautilus, Inc., 785 F.3d 1396, 1399 (Fed. Cir. 2015) (quoting 35 U.S.C. § 292(b)). In order to have standing to bring a Lanham Act false advertising claim,

---

[36]Exhibit 11 at 1, Rouder Declaration, appended to Defendant Human Power of N Company, F/K/A Neogenis Labs, Inc.'s Motion and Memorandum in Support of Motion to Dismiss Plaintiff Thermolife International, LLC's Complaint, Docket No. 24.

the plaintiff must "fall[] within the 'zone of interests' protected by the Lanham Act." Bobbleheads.com, LLC v. Wright Brothers, Inc., 259 F. Supp. 3d 1087, 1097 (S.D. Cal. 2017) (quoting Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 131 (2014)). "'[T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales.'" Id. (quoting Lexmark, 572 U.S. at 131-32). "Black's Law Dictionary defines 'competitive injury' as '[a] wrongful economic loss caused by a commercial rival, such as the loss of sales due to unfair competition[.]'" Sukamar, 785 F.3d at 1400 (quoting Black's Law Dictionary (9th ed. 2009)).

In the Ninth Circuit, a commercial or competitive injury is "generally presumed . . . when defendant and plaintiff are direct competitors and defendant's misrepresentation has a tendency to mislead consumers." TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 826 (9th Cir. 2011). But, a plaintiff does not have to be a direct competitor of the defendant in order to have standing to bring a false marking or false advertising claim. See Merck Eprova AG v. Brookstone Pharm., LLC, 920 F. Supp. 2d 404, 416 (S.D.N.Y. 2013) (finding that Merck had standing to bring a Lanham Act claim "[a]lthough Merck and Acella are not direct competitors, insofar as Merck does not produce finished consumer products, [where] Merck and Acella both produce competing sources of folate for use in dietary supplements").

Plaintiff first argues that it plausibly alleged a competitive injury in connection with defendant's N-O Indicator Strips even though plaintiff does not allege that it sells a

competing product or that it sells any components that are used to make competing products. Rather, plaintiff argues that it has alleged that defendant's false marking and false advertising of its N-O Indicator Strips has harmed plaintiff's ability to license its patents and the sales of its licensed products. Plaintiff alleges that it "licenses and sells its patented Creatine Nitrate for use in Dietary Supplements products."[37] Plaintiff argues that it is sufficient that it and defendant are competitors in the Nitric Oxide market because defendant's N-O Indicator Strips necessarily flow into that market. Plaintiff alleges that defendant's N-O Indicator Strips are part of defendant's overall scheme to convince consumers that they need defendant's Nitric Oxide supplements.[38]

Plaintiff is basically arguing that it is sufficient that it is somehow involved in the Nitric Oxide business and that the N-O Indicator Strips have something to do with Nitric Oxide business. But, such a tenuous connection is insufficient for standing purposes. Plaintiff must allege that it suffered a more direct injury as a result of defendant's alleged false marking and false advertising of its N-O Indicator Strips. Plaintiff does not have to allege that it is a head-to-head competitor. But, plaintiff must allege more than it is the same general business as defendant. Plaintiff has not plausibly alleged a competitive injury in

---

[37]Complaint at 8, ¶ 30, Docket No. 1.

[38]Id. at 2, ¶ 4.

connection with defendant's N-O Indicator Strips. Plaintiff's claims that defendant falsely marked and falsely advertised its N-O Indicator strips are dismissed for lack of standing.[39]

Plaintiff next argues that it has plausibly alleged that it has suffered a competitive or commercial injury as a result of defendant's alleged false marking and false advertising of SuperBeets, BeetElite, and Neo40. Plaintiff argues that it is sufficient for standing purposes that it has alleged that defendant "is a direct competitor of Thermolife in the sale of nitrite and nitrate technology" and that it has "suffered a competitive injury as a result of" defendant's conduct.[40] Plaintiff argues that these are not conclusory allegations because it has alleged factual support for these allegations, such as that it "licenses and sells its patented Creatine Nitrate for use in Dietary Supplement products" and that "[s]ourced and licensed from ThermoLife, Creatine Nitrate and other Amino Acid Nitrates supplied by Thermolife are included in many of the top-selling Dietary Supplements in the world."[41]

But, plaintiff's allegations of competitive or commercial injury as to the SuperBeets, BeetElite, and Neo40 products are conclusory. In order to allege a plausible competitive or commercial injury, plaintiff must allege some factual support for its allegations that there are competing products that use plaintiff's patent licenses and/or that plaintiff is selling an ingredient that is used by other manufacturers who make products that compete with

---

[39]Because these claims are being dismissed for lack of standing, the court need not consider defendant's other arguments as to the plausiblity of these claims.

[40]Complaint at 9, ¶ 37; 30, ¶¶ 131, 137, Docket No. 1.

[41]Id. at 8, ¶¶ 30-31.

defendant's products. It is not sufficient for plaintiff to just generally allege that such products exist. Plaintiff must identify some examples of such products or must allege who some of its sublicensees are. Plaintiff's complaint fails to adequately allege standing to bring false marking and false advertising claims as to the SuperBeets, BeetElite, and Neo40 products. Plaintiff's claims that defendant falsely marked and falsely advertised its SuperBeets, BeetElite, and Neo40 products are dismissed for lack of standing.[42]

Defendant also makes a conclusory argument that plaintiff's common law unfair competition claims are subject to dismissal. "'The Arizona Court of Appeals has held that the common law doctrine of unfair competition 'encompasses several tort theories, such as trademark infringement, false advertising, palming off, and misappropriation.'" Joshua David Mellberg LLC v. Will, 96 F. Supp. 3d 953, 983 (D. Ariz. 2015) (quoting Doe v. Ariz. Hosp. and Healthcare Assoc., 2009 WL 1423518, at *11 (D. Ariz. Mar. 19, 2009)). Plaintiff alleges that defendant has unfairly competed with Thermolife by falsely advertising its products and by falsely suggesting that its "products utilize 'patented' technology[.]"[43] These are false advertising claims, which "share the same analysis" as plaintiff's Lanham Act false advertising claims. 3 Ratones Ciegos v. Mucha Lucha Libre Taco Shop 1 LLC, Case No. CV-16-04538-PHX-DGC, 2017 WL 4284570, at *2 (D. Ariz. Sept. 27, 2017); see also, Walker & Zanger, Inc. v. Paragon Industries, Inc., 549 F. Supp. 2d 1168, 1182 (N.D. Cal.

---

[42]Because these claims are being dismissed for lack of standing, the court need not consider defendant's other arguments as to the plausiblity of these claims.

[43]Complaint at 31, ¶¶ 142-143, Docket No. 1.

2007) (quoting Cleary v. News Corp., 30 F.3d 1255 (9th Cir.1994) ("[i]n the Ninth Circuit, claims of unfair competition and false advertising under state statutory and common law are 'substantially congruent' to claims made under the Lanham Act"). It therefore follows that in order to state plausible unfair competition claims based on allegations that defendant is falsely advertising its products, plaintiff must adequately allege that it suffered a commercial injury as a result of defendant's false advertising. As discussed above, plaintiff had failed to adequately allege a competitive or commercial injury. Plaintiff's unfair competition claims are thus dismissed.

## Conclusion

Defendant's motion to dismiss[44] is granted. Plaintiff's complaint is dismissed. Plaintiff is, however, given leave to amend its complaint. Plaintiff's amended complaint, should it elect to file one, shall be filed on or before April 19, 2019.

DATED at Anchorage, Alaska, this 29th day of March, 2019.

/s/ H. Russel Holland
United States District Judge

---

[44] Docket No. 24.