IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Thermolife International, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NeoGenis Labs, Inc., d/b/a HumanN, | ) | |
| | ) | No. 2:18-cv-2980-HRH |
| Defendant. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

O R D E R

Motion to Dismiss

Defendant moves to dismiss plaintiff's first amended complaint.[1]  This motion is opposed.[2]  Oral argument was requested and has been heard.

Background

Plaintiff is ThermoLife International, LLC.  Defendant is NeoGenis Labs, Inc. d/b/a Human N.

Plaintiff alleges that it was founded in 1998 by Ron Kramer and that it "is a world leader in the use and development of nitrate technology."[3]  Plaintiff alleges that it "holds 23

---

[1]Docket No. 49.

[2]Docket No. 57.

[3]First Amended Complaint at 7-8, ¶¶ 21, 24, Docket No. 43.

separate and distinct patents that protect its innovative development and use of ingredients in dietary supplements and food products."[4]  Plaintiff alleges that it also "holds several patents related to the use of amino acids in combination with nitrates to increase performance" and that it is "the exclusive licensee of U.S. Patent No. 9,180,140 ('the '140 Patent'), titled 'Performance enhancing composition and use thereof."[5]  Plaintiff alleges that it "licenses the use of its patented technology . . . to many of the largest dietary supplement companies in the USA, including JYM Supplement Science."[6]  Plaintiff also alleges that it "supplies the raw materials necessary to practice its patented inventions" and that raw materials supplied by it "are included in some of the top-selling dietary supplements, including Cellucor's C4 and NO3 Ultimate, Purus Labs' Noxygen, Evlution Nutrition's PumpMode, Build Fast Formula's Vasoblitz, Ghost Pump by Ghost, and PEScience's High Volume."[7]

Defendant "sells nitric oxide test strips and dietary supplements[,]" including SuperBeets, BeetElite and Neo40.[8]  Plaintiff alleges that defendant was "formed in 2009" and that "Joel Kocher, Dr. Nathan Bryan, [and] Janet Zand are all co-founders of"

---

[4]Id. at 8, ¶ 23.

[5]Id. at ¶¶ 25-26.

[6]Id. at 9, ¶ 33.

[7]Id. at 8-9, ¶¶ 34-35.

[8]Id. at 2, ¶ 2; 26, ¶ 97.

defendant.[9]  Plaintiff alleges that [t]he majority of [defendant's] products rely on beets to provide consumers nitrates" and that defendant "is a dominant force in the beet supplementation market."[10]

Plaintiff alleges that defendant's products compete with products that use plaintiff's raw materials and products that are produced using plaintiff's patented nitrate technology.[11] Although plaintiff does not currently market oxide testing strips, plaintiff alleges that in October 2018, it began "working with Shawn Green" to "develop a consumer product test strip to support the use of products that include" plaintiff's "patented technologies."[12] Plaintiff alleges that "[w]hile the business deal is not finalized, when the deal is reached," it "will be in . . . direct competition" with defendant's "Nitric Oxide Test Strip[.]"[13]

Plaintiff alleges that defendant is falsely claiming "that it has developed a 'patent pending' method to determine 'if you are N-O [nitric-oxide] deficient' and/or 'if you're getting enough dietary nitrate through the foods that you eat': HumanN's nitric oxide Indicator Strips."[14]  Plaintiff alleges that this claim is false because "[i]n fact, on August 13,

---

[9]Id. at 22, ¶ 82.

[10]Id. at 16, ¶¶ 58, 62.

[11]Id. at 11, ¶ 42.

[12]Id. at 18, ¶¶ 67-68.

[13]Id. at 18, ¶ 71.

[14]Id. at 23, ¶ 88.

2013, HumanN's Dr. Nathan Bryan applied for a patent for a 'method of determining the level of nitric oxide (NO) or nitrite (NO2-)" but "[t]he United States Patent Office rejected all 35 proposed patent claims."[15]

Plaintiff also alleges that defendant is falsely claiming that the N-O Indicator Strips "can determine whether an individual is nitric oxide deficient[.]"[16] Plaintiff alleges, however, that "it is well-settled that you cannot determine whether an individual is 'deficient in N-O [nitric oxide]' and/or 'getting sufficient nitric-oxide activating nutrients through [their] diet' simply by testing their saliva one time."[17] Plaintiff alleges that a 2015 study (the Clodfelter study) tested defendant's N-O Indicator Strips, along with other similar products, and concluded that "'[t]here is no correlation between plasma NO2- and salivary NO3- . . . . Our results argue against the use of salivary NO2- as a marker for NO bioavailability.'"[18]

Plaintiff next alleges that defendant is falsely claiming "that [its] top-selling BeetElite, SuperBeets, and Neo40 products practice six patents that HumanN exclusively licenses from the University of Texas[.]"[19] Plaintiff alleges that defendant formerly "list[ed] six patent numbers" on the labels of these products but that in mid-2017, defendant "removed [three]

---

[15]Id. at 23-24, ¶ 89.

[16]Id. at 26, ¶ 96.

[17]Id. at 25, ¶ 94.

[18]Id. at 25, ¶¶ 96.

[19]Id. at 3, ¶ 5.

patent numbers from these products' labels that the products clearly never practiced[.]"[20] Plaintiff alleges, however, that "[defendant's] website, Amazon.com, and countless other websites on the internet where consumers go to actually purchase the product, still mislead consumers by showing all six patent numbers."[21]

As for the three patents still listed on the SuperBeets and BeetElite labels, the '589, '570, and '999 patents, plaintiff alleges that BeetElite and SuperBeets "do not practice" any of these patents.[22] Plaintiff alleges that all three patents "require a 'nitrite salt' to practice the patented inventions" but that defendant "is well aware that its SuperBeets and BeetElite products do not contain a nitrite salt[.]"[23]

Plaintiff further alleges that

> even if the nitrites in the BeetElite and SuperBeets products could be considered 'nitrite salts' (which they cannot), the products would still also be falsely marked, falsely advertised, misbranded, and prohibited for sale in interstate commerce because they are under-dosed (i.e., they fail to include sufficient quantity of nitrites of any sort to practice the patented inventions).[24]

---

[20]Id. at 27, ¶¶ 103-105; 31-32, ¶¶ 130-131.

[21]Id. at 27, ¶ 105; 32, ¶ 132.

[22]Id. at 28, ¶ 108.

[23]Id. at 29, ¶ 118.

[24]Id. at 29, ¶ 119.

Plaintiff alleges that it did laboratory testing on the BeetElite and SuperBeets products in 2016 and 2018 and that both tests showed that the products contained an insufficient amount of nitrites to practice the '589 and '570 patents.[25]

Plaintiff also alleges that defendant is falsely claiming that its "licensed patents protect 'patented Nitric Oxide technology'[.]"[26] Plaintiff alleges that

> [o]f the six patents that [defendant] has licensed from the University of Texas, . . . three are merely composition patents that protect a mixture of certain nitrites and nitrates and the other three patents protect methods of administering compositions; however, none of the patents include a claim for producing nitric oxide. In fact, not one of the 75 claims included in the six patents falsely marked on [defendant's] products even include the phrase "nitric oxide" in any claim.[[27]]

Plaintiff next alleges that defendant is falsely claiming "that HumanN's research is 'Nobel-Prize winning'[.]"[28] Plaintiff alleges that defendant had nothing to do with the 1998 Nobel Prize to which it refers and that defendant "falsely advertises itself as a Nobel Prize winner in order to falsely convey to consumers that its owns a monopoly on 'patented nitric oxide technology.'"[29]

---

[25]Id. at 29-30, ¶¶ 120-126.

[26]Id. at 26, ¶ 98.

[27]Id. at 35, ¶ 143.

[28]Id. at 26, ¶ 98.

[29]Id. at 38-39, ¶¶ 150-153.

Plaintiff next alleges that defendant is falsely claiming that it "is the only company that can practice 'patented N-O platform technology.'"[30] Plaintiff alleges that there are other products "that rely on nitric oxide technology," including products that use creatine nitrate, which is supplied by plaintiff and "included in many of the top-selling dietary supplements in the world."[31]

Finally, plaintiff alleges that defendant is falsely claiming that its products are Foods or Dietary Supplements.[32]

Plaintiff commenced this action on September 20, 2018. In its original complaint plaintiff asserted false marking claims pursuant to 35 U.S.C. § 292, Lanham Act false advertising claims, and common law unfair competition claims. Plaintiff's complaint was dismissed for lack of standing because plaintiff failed to adequately allege a competitive or commercial injury. Plaintiff was given leave to amend its complaint, and on April 26, 2019, plaintiff filed its first amended complaint. Plaintiff again asserts false marking claims pursuant to 35 U.S.C. § 292, Lanham Act false advertising claims, and common law unfair competition claims. For relief, plaintiff seeks "an accounting for the past five years of all gains, profits, and advantages derived by [d]efendant's false marking of the BeetElite, SuperBeets, Neo40, and N-O Indicator Strips products[,]" damages, a disgorgement of

---

[30]Id. at 39, ¶ 154.

[31]Id. at 39, ¶ 156; 40, ¶ 158.

[32]Id. at 40, ¶ 160.

profits, treble damages under 15 U.S.C. §§ 1117 and 1125(a), pre- and post-judgment interest, and "such other and further relief as this [c]ourt may deem just and proper."[33]

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, defendant now moves to dismiss plaintiff's first amended complaint.

Discussion

"'To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Zixiang Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). "The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully." Id. "'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 678). "[T]he complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" In re Rigel Pharmaceuticals, Inc. Securities Litig., 697 F.3d 869, 875 (9th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual

---

[33]Id. at 44.

allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff." Adams v. U.S. Forest Srvc., 671 F.3d 1138, 1142-43 (9th Cir. 2012). "However, the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations." In re Tracht Gut, LLC, 836 F.3d 1146, 1150 (9th Cir. 2016).

First Cause of Action – false marking claims

"Title 35 section 292(a) prohibits, in part, 'mark[ing] upon . . . in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented, for the purpose of deceiving the public.'" Sukumar v. Nautilus, Inc., 785 F.3d 1396, 1399 (Fed. Cir. 2015) (quoting 35 U.S.C. § 292(a)). "Section 292(b) provides a private right of action to enforce § 292(a) to any 'person who has suffered a competitive injury as a result of a violation of this section.'" Id. (quoting 35 U.S.C. § 292(b)).

Defendant first argues that plaintiff lacks standing to bring a false marking claim in connection with the N-O Indicator Strips because plaintiff has still not alleged that it suffered a competitive injury as a result of defendant's alleged false marking of this product. A "competitive injury" has been defined as "'[a] wrongful economic loss caused by a commercial rival, such as the loss of sales due to unfair competition[.]'" Id. at 1400 (quoting Black's Law Dictionary (9th ed. 2009)). However, "§ 292(b) extends standing to sue for a violation of § 292(a) to some potential competitors." Id. "[A] potential competitor is

engaged in competition if it has attempted to enter the market, which includes intent to enter the market and action to enter the market." Id.

In its amended complaint, plaintiff alleges that it is attempting to enter the nitric-oxide test strip market. Plaintiff alleges that "[s]ince at least October 2018, [it] has been working with Shawn Green on this project. Mr. Green is the former owner of Berkeley Test, LLC, which holds U.S. Patents Nos. 9,759,716 and 9,360,490. . . . Both patents relate to methods for testing and monitoring biomarkers of nitric oxide."[34] Plaintiff further alleges that "Mr. Green is currently working on a next generation saliva test strip[] to monitor salivary nitrite levels in relation to blood pressure and . . . strips that measure NO probiotic in saliva."[35] Plaintiff alleges that it has had "several face-to-face meeting[s] and numerous phone conferences" to discuss this project with Mr. Green and that "when the deal is reached, [it] will be in . . . direct competition with HumanN's Nitric Oxide Test Strip[s]."[36]

"'[S]tanding is to be determined as of the commencement of suit.'" United States v. Maricopa County, 151 F. Supp. 3d 998, 1009 n.6 (D. Ariz. 2015) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 570, n.5 (1992)). Here, plaintiff alleges that it began working on the test strip project in October 2018, which was after plaintiff commenced this lawsuit in September 2018.

---

[34]First Amended Complaint at 18, ¶ 68, Docket No. 43.

[35]Id. at 18, ¶ 69.

[36]Id. at 18, ¶¶ 69, 71.

Plaintiff, however, argues that "[t]he Court must measure standing by the state of the world as of the date of the [a]mended [c]omplaint.'" G & E Real Estate, Inc. v. Avison Young—Wash., D.C., LLC, 168 F. Supp. 3d 147, 159 (D.D.C. 2016). Plaintiff contends that the Ninth Circuit adopted this rule in Northstar Financial Advisors Inc. v. Schwab Investments, 779 F.3d 1036 (9th Cir. 2015).

But, plaintiff is wrong. As the Ninth Circuit has noted, Northstar did

> not actually address whether standing is measured at the time of
> an initial complaint or at the time of an amended complaint, as
> opposed to whether the allegations in an amended complaint
> may sometimes be considered in evaluating whether there was
> standing at the time the case was originally filed or whether an
> amended complaint may be considered a supplemental pleading
> under Federal Rule of Civil Procedure 15(d).

In re Zappos.com, Inc., 888 F.3d 1020, 1028 n.10 (9th Cir. 2018). The rule in the Ninth Circuit is that "standing—where it would have been necessary to bring the claim in the district court—cannot be created retroactively. . . ." Western Watersheds Project v. Kraayenbrink, 632 F.3d 472, 483 n.6 (9th Cir. 2011); see also, Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 180 (2000) (courts have "an obligation to assure [themselves] that [a plaintiff] had Article III standing at the outset of the litigation"). Plaintiff did not have standing to bring its false marking claims with respect to the N-O Indicator Strips "at the outset of th[is] litigation[.]" Id. Thus, plaintiff's false marking claims with respect to the N-O Indicator Strips are dismissed. Plaintiff is not given leave to amend these claims because it is unlikely that plaintiff could ever allege that it had

standing to bring these claims at the outset of this litigation and because plaintiff has already had two opportunities to adequately plead standing.

Defendant next argues that plaintiff's false marking claims as to SuperBeets, BeetElite, and Neo40 should be dismissed as implausible. These claims consist of two groups. One group is claims based on allegations that defendant is still showing pictures of these products on the internet that list six patents on the products' labels even though defendant removed three of the patents from the actual product labels in 2017 (the internet claims). The other group is claims based on allegations that these products do not practice the three patents which are still listed on the products' actual labels (the under-dosed claims).

"'The two elements of a § 292 false marking claim are (1) marking an unpatented article and (2) intent to deceive the public.'" Juniper Networks, Inc. v. Shipley, 643 F.3d 1346, 1350 (Fed. Cir. 2011) (quoting Forest Grp. Inc. v. Bon Tool Co., 590 F.3d 1295, 1300 (Fed. Cir. 2009)). "Intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true." Clontech Laboratories, Inc. v. Invitrogen Corp., 406 F.3d 1347, 1352 (Fed. Cir. 2005).

Defendant argues that the first group of claims, the internet claims, are not plausible for two reasons. First, defendant argues that when a product carries both proper and false patent markings, a plaintiff must show specifically that the falsely marked patents caused it

harm. This argument is based on <u>Sukumar</u>, in which the court observed that "a potential competitor must show that the falsely marked patents deterred market entry, but that—for some reason—the properly marked patents did not deter market entry." 785 F.3d at 1402. Defendant contends that because it properly marks its products with at least one patent (the '999 patent), plaintiff must plead sufficient facts to show that it was somehow injured by the other patent markings, which, according to defendant, plaintiff has not done.

"When the [false marking] statute refers to an 'unpatented article' the statute means that the article in question is not covered by at least one claim of each patent with which the article is marked." <u>Clontech Laboratories</u>, 406 F.3d at 1352. In other words, "courts must consider whether a product is falsely marked with each patent." <u>DP Wagner Mfg. Inc. v. Pro Patch Systems, Inc.</u>, 434 F. Supp. 2d 445, 455 (S.D. Tex. 2006). Even if SuperBeets, BeetElite, and Neo40 practice the '999 patent, it is plausible that they do not practice at least some of the other five patents and it is plausible to infer that plaintiff has been injured as a result of this false marking because a consumer might be more likely to purchase a product that lists several patents as opposed to a product that lists only one patent.

Defendant also argues that the internet claims should be dismissed because plaintiff has not adequately alleged intent. Defendants argue that the removal of the three patents from the product labels "militate against an intent to deceive the public. . . ." <u>Public Patent Foundation, Inc. v. GlaxoSmithKline Consumer Healthcare, L.P.</u>, 801 F. Supp. 2d 249, 265 (S.D.N.Y. 2011). But given that plaintiff has alleged that defendant still continues to list all

six patents on its products as they are advertised on the internet, plaintiff has plausibly alleged intent.

As for the second group of claims, the under-dosed claims, plaintiff alleges that BeetElite and SuperBeets do not practice the three patents because "[t]he '589 Patent, '570 Patent, and '999 Patent all require a 'nitrite salt' to practice the patented inventions: but SuperBeets and BeetElite . . . do not contain a nitrite salt[.]"[37] Defendant argues that these claims are not plausible because it has offered a Certificate of Analysis, which the court took judicial notice of, which shows that the product being tested, "NEO Dry Blend BC Flavor w/ Vit C[,]" contained sodium nitrite,[38] which defendant contends is a nitrite salt.

But the Certificate of Analysis does not make plaintiff's SuperBeets and BeetElite under-dosed claims implausible. Even assuming that the court could take judicial notice of the facts contained in the Certificate, it is not at all clear that the product that was tested is used in BeetElite and/or SuperBeets.

Plaintiff also alleges that "even if the nitrites in the BeetElite and SuperBeets products could be considered 'nitrite salts' (which they cannot), the products would still be falsely marked . . . because . . . they fail to include a sufficient quantity of nitrites of any sort to

---

[37]First Amended Complaint at 29, ¶ 118, Docket No. 43.

[38]Exhibit 12 at 2, Defendant Human Power of N Company, F/K/A Neogenis Labs, Inc's. Motion . . . to Dismiss [etc.], Docket No. 24.

practice the patented inventions[.]"[39]   Plaintiff alleges that it did laboratory testing on SuperBeets and BeetElite in May 2016 and August 2018 and that this testing showed that "in 2016, [n]either product contain[ed] sufficient nitrites of any sort to practice the '589 and '570 Patents" and that in 2018, SuperBeets still did not contain a sufficient amount of nitrites to practice the '589 patent or the '570 patent.[40]

Defendant argues that these claims are not plausible because plaintiff does not allege whether it tested nitrite salts generally or sodium nitrite specifically.  Moreover, defendant argues that the amount of nitrite found in plaintiff's testing would have to be converted to sodium nitrite in order to determine if the products actually practice the three patents.  Doing such a conversion, according to defendant, shows that SuperBeets and BeetElite do practice the three patents because "nitrite has a lower molecular weight than sodium nitrite[.]"[41]

As plaintiff is quick to point out, much of the foregoing is attorney argument, not facts on which the court could rely to determine whether SuperBeets and BeetElite practice the three patents.  Plaintiff has plausibly alleged that SuperBeets and BeetElite do not practice the '589 and '570 patents.  Plaintiff's under-dosed claims as to SuperBeets and BeetElite are plausible.

---

[39]First Amended Complaint at 29, ¶ 119, Docket No. 43.

[40]Id. at 29-30, ¶¶ 120, 123, 126.

[41]Defendant's Motion to Dismiss Plaintiff's First Amended Complaint at 11, Docket No. 49.

As for plaintiff's Neo40 under-dosed claims, these claims are not plausible. Plaintiff has alleged no factual support for its contention that Neo40 does not practice the three patents. All plaintiff has done is make a conclusory allegation that Neo40 does not practice the three patents, which is insufficient. Plaintiff's Neo40 under-dosed claims are dismissed. Plaintiff is, however, given leave to amend as to this claim because the court did not address the sufficiency of plaintiff's allegations except as they pertained to standing when deciding defendant's first motion to dismiss.

Defendant then argues that all of plaintiff's false marking claims should be dismissed because plaintiff has failed to allege these claims with the required particularity. "Rule 9(b)'s particularity requirement applies to false marking claims. . . ." In re BP Lubricants USA Inc., 637 F.3d 1307, 1309 (Fed. Cir. 2011). "To properly plead fraud with particularity under Rule 9(b), 'a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" Davidson v. Kimberly–Clark Corp., 889 F.3d 956, 964 (9th Cir. 2018) (quoting Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011)).

Defendant argues that plaintiff has not alleged sufficient factual support from which the court could reasonably infer that defendant acted with the requisite state of mind. Defendant points out that plaintiff has alleged that defendant licenses it patents from the

University of Texas.[42]  Defendant argues that it would not be reasonable to infer that it would pay royalties to the University of Texas even though it knew that its products did not practice the patents.  Defendant argues that it is not sufficient that plaintiff alleges that "[d]efendant is a sophisticated business entity and knew or reasonably should have known that marking SuperBeets, BeetElite, and Neo40 with inapplicable patents . . . violated 35 U.S.C. § 292. . . ."[43]  Defendant argues that this is the type of allegation that the court found lacking in In re BP Lubricants.  There, the "relator contend[ed] that asserting in the complaint that BP is a 'sophisticated company and has experience applying for, obtaining, and litigating patents' is enough under Rule 9(b)."  637 F.3d at 1312. But, the "court disagree[d]," explaining that this "bare assertion provides no more of a basis to reasonably distinguish a viable complaint than merely asserting the defendant should have known" that its products did not practice the inventions.  Id.

Plaintiff has alleged scienter with sufficient particularity.  Plaintiff has alleged the who, what, when, where, and how as to its false marking claims as well as what makes defendant's marking of its products false.

Second Cause of Action – Lanham Act false advertising claims

Defendant first argues that plaintiff lacks standing to bring Lanham Act false advertising claims with respect to the N-O Indicator Strips.  In order to have standing to bring

---

[42]First Amended Complaint at 4, ¶ 7, Docket No. 43.

[43]Id. at 42, ¶ 172.

a Lanham Act false advertising claim, the plaintiff must "fall[] within the 'zone of interests' protected by the Lanham Act." Bobbleheads.com, LLC v. Wright Brothers, Inc., 259 F. Supp. 3d 1087, 1097 (S.D. Cal. 2017). "'[T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales.'" Id. (quoting Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 131-32 (2014). "Specifically, 'a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff.'" Id. (quoting Lexamark, 572 U.S. at 132).

Defendant argues that if plaintiff's false marking claims with respect to the N-O Indicator Strips fail because of a lack of standing, plaintiff's Lanham Act false advertising claims with respect to the N-O Indicator Strips would also fail. However, plaintiff argues that it does not have to prove any injury in order to be entitled to injunctive relief on a Lanham Act claim and cites to Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197 (9th Cir. 1989), in support. There, the Ninth Circuit observed that "because of the possibility that a competitor may suffer future injury, as well as the additional rationale underlying section 43(a)—consumer protection—a competitor need not prove injury when suing to enjoin conduct that violates section 43(a)" of the Lanham Act. Id. at 210. Plaintiff argues that it can seek injunctive relief to stop one of its competitors in the nitric oxide market from falsely advertising its N-O Indicator Strips.

The problem with this argument is that plaintiff is not one of defendant's competitors in the N-O test strip market. Although plaintiff may be attempting to enter this market, it is, at best, currently a potential competitor. It is not sufficient that plaintiff is a competitor of defendant's in the more general "nitric oxide" market. Plaintiff's Lanham Act false advertising claims with respect to the N-O Indicator Strips are dismissed for lack of standing. Plaintiff is not given leave to amend as to these claims for the same reasons plaintiff is not given leave to amend as to its N-O Indicator Strips false marking claims.

As for the remainder of plaintiff's false advertising claims, defendant argues that these claims should be dismissed because they are implausible.

> There are five elements to a false advertising claim under Section 43(a) of the Lanham Act:
>
> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product;
> (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;
> (3) the deception is material, in that it is likely to influence the purchasing decision;
> (4) the defendant caused its false statement to enter interstate commerce; and
> (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

Skydive Arizona, Inc. v. Quattrocchi, 673 F.3d 1105, 1110 (9th Cir. 2012) (citing 15 U.S.C. § 1125(a)(1)(B); Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997)).

Defendant's arguments focus on the first element. "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." Southland Sod Farms, 108 F.3d at 1139. "Even if an advertisement is not literally false, relief is available under Lanham Act § 43(a) if it can be shown that the advertisement has misled, confused, or deceived the consuming public." Id. at 1140. "'[T]he Lanham Act encompasses more than blatant falsehoods. It embraces innuendo, indirect intimations, and ambiguous suggestions evidenced by the consuming public's misapprehension of the hard facts underlying an advertisement.'" William H. Morris Co. v. Group W, Inc., 66 F.3d 255, 257–58 (9th Cir. 1995) (quoting Vidal Sassoon, Inc. v. Bristol–Myers Co., 661 F.2d 272, 277 (2d Cir. 1981)).

Defendant first argues that plaintiff's claim that it is falsely advertising that its products use "patented Nitric Oxide technology" is not plausible. Defendant argues that this claim is not plausible because, as defendant argued above, some of its products practice the '589, '570, and '999 patents. But, for the same reasons that plaintiff's false marking claims with respect to SuperBeets and BeetElite are plausible, this false advertising claim is also plausible.

Defendant next argues that plaintiff's false advertising claim based on the Nobel Prize allegations is not plausible. Plaintiff alleges that "on its website, [defendant] repeatedly touts

its achievement of winning the Nobel Prize"[44] but that this is not true as "the Nobel Prize that [defendant] references was awarded in 1998 to Robert Francis Furchgott, Louis J. Ignarro, and Ferid Murad for their discoveries concerning nitric oxide as a signaling molecule in the cardiovascular system[,]" more than ten years before defendant's predecessor company was founded.[45] But, defendant argues that nowhere does it claim to have discovered Nitric Oxide or won the Nobel Prize. Defendant argues that none of the advertising examples that plaintiff includes in its complaint make such a claim.

Plaintiff alleges that defendant makes the following statement on its website:

> [o]ur research on Nitric Oxide first began with the discovery of its unique impact on cardiovascular health. Its immense importance as a biological signaling molecule resulted in the awarding of the Nobel Prize in 1998. Realizing that the discovery of Nitric Oxide had immense potential, it didn't take long for our interest in N-O to become our passion.[[46]]

Plaintiff also alleges that defendant asserts that it is connected to "Nobel Prize-winning research" and that defendant states on its website that "[d]ubbed the 'miracle molecule,' the discovery of Nitric Oxide, the first gas to be identified as such, won the Nobel Prize in 1998. This discovery is what HumanN is built on."[47]

---

[44]First Amended Complaint at 37, ¶ 146, Docket No. 43.

[45]Id. at 38, ¶¶ 150-152.

[46]Id. at 37, ¶ 147.

[47]Id. at 38, ¶¶ 148-149; 37, ¶ 146.

These allegations are sufficient to make plaintiff's false advertising claim based on the Nobel Prize references plausible. At the very least, plaintiff has alleged that defendant is falsely suggesting that it is doing Nobel Prize winning research or has done such research in the past and it is plausible that a consumer would be misled by such a suggestion.

Plaintiff also contends that defendant is falsely advertising that it "is the only company that can practice 'patented N-O platform technology.'"[48] Plaintiff alleges that there are other products "that rely on nitric oxide technology[,]" including products that use creatine nitrate, which is supplied by plaintiff and "included in many of the top-selling dietary supplements in the world."[49] While this allegation would seem to make this claim plausible, there is a problem with this false advertising claim. Plaintiff has only alleged one example of an advertisement in which defendant is allegedly making this claim. But, that example does not state that defendant is the only company that can practice patented N-O platform technology.

The example plaintiff alleges is from a video testimonial that is allegedly on defendant's website, in which Dr. Bryan allegedly states "'there is not any product out there, despite dozens if not hundreds of . . . nitric oxide products on the market, food or supplement, that do[es] what our technology does.'"[50] Nowhere in this example does Dr. Bryan allegedly claim that defendant is the only company who can practice patented N-O

_____

[48]Id. at 39, ¶ 154.

[49]Id. at 39, ¶ 156; 40, ¶ 158.

[50]Id. at 39, ¶ 155.

platform technology. Because plaintiff had not adequately alleged that defendant is advertising that it is the only company who can practice patented N-O platform technology, this false advertising claim is dismissed. But, plaintiff is given leave to amend this claim.

To the extent that, based on the statement by Dr. Bryan, plaintiff is alleging that defendant is falsely advertising that its technology is the best, such a claim would fail because Dr. Bryan's statement is nonaction puffery. "'"Puffing" is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely and is not actionable under § 43(a).'" <u>Southland Sod Farms</u>, 108 F.3d at 1145 (quoting 3 <u>J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition</u> § 27.04[4][d] at 27–52 (3d ed.1994)). "While product superiority claims that are vague or highly subjective often amount to nonactionable puffery, misdescriptions of specific or absolute characteristics of a product are actionable." <u>Id.</u> (citation omitted). "A specific and measurable advertisement claim of product superiority based on product testing is not puffery." <u>Id.</u> "A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance." <u>Newcal Industries, Inc. v. Ikon Office Solution</u>, 513 F.3d 1038, 1053 (9th Cir. 2008). "[T]he determination of whether an alleged misrepresentation is a statement of fact or is instead mere puffery is a legal question that may be resolved on a Rule 12(b)(6) motion." <u>Id.</u> (citation omitted). Dr. Bryan's alleged statement is nothing more than a vague statement of superiority.

Finally, defendant argues that plaintiff's claim that defendant is falsely advertising its products as Foods or Dietary Supplements should be dismissed. Defendant argues that this seems to be an attempt by plaintiff to plead a violation of 21 U.S.C. § 343(a)(1), which provides that "[a] food shall be deemed to be misbranded . . . [i]f . . . its labeling is false or misleading in any particular[.]" Only the FDA or the Department of Justice has standing to enforce a § 343(a)(1) violation. See, e.g., In re Orthopedic Bone Screw Products Liability Litig., 193 F.3d 781, 788 (3rd Cir. 1999) ("[i]t is well settled . . . that the FDCA creates no private right of action").

If plaintiff were attempting to allege that defendant's products are misbranded in violation of 21 U.S.C. § 343(a)(1), plaintiff would be precluded from bringing such a claim. But, plaintiff could plead a plausible claim that defendant is falsely advertising that its products are foods or dietary supplements, as those terms are defined by the FDA. Plaintiff, however, has not done so in its first amended complaint because plaintiff's allegations as to this false advertising claim are conclusory. Plaintiff alleges that defendant's products are falsely advertised as food or dietary supplements, but plaintiff does not allege any factual support. This false advertising claim is dismissed but plaintiff is given leave to amend as to this claim.

Third Cause of Action – common law unfair competition claims

"The Arizona Court of Appeals has held that the common law doctrine of unfair competition 'encompasses several tort theories, such as trademark infringement, false

advertising, palming off, and misappropriation." <u>Joshua David Mellberg LLC v. Will</u>, 96 F.

Supp. 3d 953, 983 (D. Ariz. 2015) (citations omitted). Plaintiff alleges that "[d]efendant has

unfairly competed with Thermolife by intentionally using false and misleading advertising

statements" and "by employing a marketing strategy that falsely suggests that [d]efendant's

products utilize 'patented' technology[.]"[51] These are false advertising claims, which "share

the same analysis" as plaintiff's Lanham Act false advertising claims. <u>3 Ratones Ciegos v.</u>

<u>Mucha Lucha Libre Taco Shop 1 LLC</u>, Case No. CV-16-04538-PHX-DGC, 2017 WL

4284570, at *2 (D. Ariz. Sept. 27, 2017).

Because plaintiff's Lanham Act false advertising and plaintiff's unfair competition

claims share the same analysis, plaintiff's unfair competition claims based on allegations that

defendant is falsely advertising that it is the only company that can practice patented N-O

platform technology and that its products are foods or dietary supplements as defined by the

FDA are dismissed. Plaintiff is, however, given leave to amend these claims. To the extent

that any of plaintiff's unfair competition claims are based on the N-O Indicator claims, those

claims are also dismissed but plaintiff is not given leave to amend the N-O Indicator claims.

Conclusion

Defendant's motion to dismiss plaintiff's first amended complaint[52] is granted in part

and denied in part. Plaintiff's claims with respect to the N-O Indicator Strips are dismissed

---

[51]First Amended Complaint at 43, ¶¶ 185-186, Docket No. 43.

[52]Docket No. 49.

because plaintiff lacks standing to bring these claims. Plaintiff's under-dosed false marking claim as to Neo40 is dismissed. Plaintiff's false advertising and unfair competition claims based on allegations that defendant is falsely advertising that it is the only company that can practice patented N-O platform technology and that its products are foods or dietary supplements as defined by the FDA are dismissed. Defendant's motion to dismiss is otherwise denied. Plaintiff is not given leave to amend as to any of its N-O Indicator claims. Plaintiff is, however, given leave to amend as to any of the other claims that have been dismissed. Plaintiff's second amended complaint, should plaintiff elect to file one, shall be filed on or before September 25, 2019.

DATED at Anchorage, Alaska, this 4th day of September, 2019.

/s/ H. Russel Holland
United States District Judge