WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ThermoLife International LLC, | No. CV-18-02980-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Neogenis Labs Incorporated, | |
| Defendant. | |
| NeoGenis Labs, Incorporated, | |
| Counter-Claimant, | |
| v. | |
| ThermoLife International, LLC and Ronald L. Kramer | |
| Counter-Defendants. | |

Pending before the Court is ThermoLife's motion to stay HumanN's counterclaims and to voluntarily dismiss its claims without prejudice. (Doc. 189.) The motion is fully briefed (Docs. 199, 200) and neither side has requested oral argument. For the following reasons, the motion is denied.

**RELEVANT BACKGROUND**

ThermoLife, as alleged in its operative complaint, "is a world leader in the use and development of nitrate technology in dietary supplements." (Doc. 68 ¶ 1.) ThermoLife "licenses its patented technology to dietary supplement companies" and also "supplies

nitrates, which are necessary to practice many of its patented inventions," to those companies. (*Id.*) HumanN, too, holds patents related to the use of nitrate technology. (*Id.* ¶ 2.) HumanN also manufactures and sells dietary supplements containing nitrate technology. (*Id.*) Thus, HumanN "competes with ThermoLife and the companies that utilize ThermoLife's patented technology." (*Id.*)

In this action, ThermoLife accuses HumanN of engaging in false advertising, false marking, and unfair competition by, *inter alia*, marking three of its nitrate-related products with inapplicable patent numbers. (*Id.* ¶¶ 209-29.) According to ThermoLife, this misconduct has caused it to suffer "competitive injury" due to its status as "a direct competitor" of HumanN "in the sale of nitrite/nitrate technology." (*Id.* ¶ 215.) Put another way, ThermoLife contends it "has suffered a commercial injury based upon [HumanN's] misrepresentations," which have been "harmful to ThermoLife's ability to compete." (*Id.* ¶¶ 220-22.) Among other remedies, ThermoLife seeks "damages adequate to compensate [ThermoLife] for the competitive injury suffered." (*Id.* at 57.) The damages sought by ThermoLife include compensation for "los[t] profits, market share, and good will." (Doc. 105 at 3 [Rule 26(f) report].) HumanN denies ThermoLife's allegations and also asserts various counterclaims. (Doc. 117.) The theory underlying HumanN's counterclaims is that ThermoLife and its founder (1) "have engaged in anticompetitive conduct, including assertion of patent rights in sham lawsuits against HumanN and other competitors, and threats of sham lawsuits against HumanN and other competitors, in bad-faith in an attempt to monopolize the nitrate/nitrite supplementation market";[1] (2) have "engaged in false advertising, unfair [competition], and trade libel by publishing false and derogatory statements regarding HumanN and its products in commercial advertising"; and (3) have "tortiously interfered with HumanN's customer relationships by falsely advising

---

[1] These allegations formed the basis for HumanN's counterclaims for attempted monopolization under the Sherman Act and violations of Arizona's Patent Troll Prevention Act (the "PTPA"). (Doc. 117 ¶¶ 95-103, 137-45.) Although HumanN's attempted monopolization counterclaim has been dismissed (Doc. 176 at 7-19 [dismissing counterclaim because "HumanN's extremely detailed allegations, which have been refined through one round of amendment, establish an affirmative lack of market power"]), its counterclaim under the PTPA remains pending.

HumanN's customers that its products infringe ThermoLife's patents." (Doc. 105 at 3-4.)

Filed in September 2018 (Doc. 1), this action has been pending for almost three years. The Court and the parties have plodded through (1) two motions to dismiss ThermoLife's complaint (Docs. 40, 63 [orders resolving motions]), resulting in an operative Second Amended Complaint ("SAC") (Doc. 68); (2) two motions to dismiss HumanN's counterclaims (Docs. 113, 176 [orders resolving motions]); (3) several requests to stay the case pending settlement discussions that ultimately proved unsuccessful (Docs. 76, 78, 80, 82); (4) several requests to extend case deadlines (Docs. 116, 124, 184); and (5) various discovery disputes (Docs. 128, 130, 139, 142, 147, 175, 177). Fact discovery is set to close on June 21, 2021. (Doc. 184.)

Meanwhile, on February 11, 2021, ThermoLife filed suit against HumanN in the Western District of Texas (the "Texas Litigation"), alleging that three of HumanN's products—SuperBeets, BeetElite, and Neo40—infringe three of its patents: Patent Nos. 9,180,140 (the "'140 Patent"), 8,455,531 (the "'531 Patent"), and 10,555,968 (the "'968 Patent"). (Doc. 174-1.)[2] On April 7, 2021, HumanN filed an answer and asserted counterclaims against ThermoLife in the Texas Litigation. (Doc. 174-2.) HumanN's three products, and ThermoLife's past assertions of infringement related to the '140 and '531 Patents, are also at issue in this lawsuit.

**DISCUSSION**

I.   <u>Legal Standard</u>

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Nonetheless, "while it is the prerogative of the district court to manage its workload, case management standing alone is not necessarily a sufficient ground to stay proceedings." *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059,

---

[2] ThermoLife previously attached the Texas Litigation complaint and HumanN's answer and counterclaims to a request for judicial notice (Doc. 174), which the Court granted because the request was unopposed (Doc. 179).

1066 (9th Cir. 2007). When determining whether to issue a *Landis* stay, courts must weigh "competing interests," which include "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). *See also Percy v. United States*, 2016 WL 7187129, *2 (D. Ariz. 2016). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433-434 (2009). "If there is even a fair possibility that the stay will work damage to someone else, the party seeking the stay must make out a clear case of hardship or inequity." *Percy*, 2016 WL 7187129 at *2.

II.  The Parties' Arguments

ThermoLife argues that a stay is warranted because the Texas Litigation "will resolve legal disputes between the parties that will be dispositive to likely all of HumanN's counterclaims in this case, namely whether HumanN's SuperBeets, BeetElite, and Neo40 products (the products raised in ThermoLife's Second Amended Complaint here) infringe ThermoLife's patents (the primary premise for HumanN's false advertising, trade libel, and unfair competition counterclaims), including the '140 patent (the same patent at issue in HumanN's counterclaim under [the PTPA]) and the '531 patent (the same referenced in HumanN's tortious interference claim)." (Doc. 189 at 4, 6-8.) ThermoLife also argues that (1) a stay would "likely benefit HumanN" because it would "likely resolve—or at the very least significantly alter—the legal basis for HumanN's counterclaims and thus would save HumanN's resources from being expended on the cost of litigating potentially foreclosed (or altered) claims" and (2) ThermoLife would be harmed without a stay because "requiring ThermoLife to continue defending against HumanN's counterclaims risks not only wasted resources with significant discovery and trial burdens but potentially inconsistent and confusing outcomes." (*Id.* at 6, internal quotation marks omitted.) Last,

ThermoLife argues that, if the Court stays resolution of HumanN's counterclaims, "ThermoLife's affirmative claims should be dismissed without prejudice under Rule 41(a)(2)." (*Id.* at 8-10.)[3]

HumanN responds that a stay is not warranted because "no schedule has even issued in the Western District of Texas action," so a stay would necessarily be indefinite, whereas in this action the pleadings are settled, fact discovery is nearly complete, and depositions will be concluded by the end of this month. (Doc. 199 at 1.) HumanN also disagrees that a ruling in the Texas Litigation would necessarily resolve the counterclaims in this action, arguing that (1) its false advertising claim is based on alleged false statements by ThermoLife unrelated to infringement of the '140, '531, or '968 Patents and (2) certain aspects of its counterclaims are based on Amazon's suspension of SuperBeets and Beet Elite due to alleged infringement of the '531 Patent, whereas ThermoLife only accuses *Neo40* of infringing the same patent in the Texas Litigation. (*Id.* at 9-12.) HumanN also argues that it would be prejudiced by a stay because a stay could lead to loss of relevant evidence and because "discovery taken [in the Texas Litigation] will have limited (and, in some instances, no) utility with respect to HumanN's claims here for false advertising, unfair competition, and the rest." (*Id.* at 8-9.) Last, HumanN argues that ThermoLife's claims of no-harm-from-a-stay are unavailing because "[t]here is nothing inequitable in requiring ThermoLife to litigate a case that ThermoLife itself initiated." (*Id.* at 12-13, emphasis omitted.)

ThermoLife replies that a stay would not be indefinite because the judge overseeing the Texas Litigation adheres to a default schedule for patent cases that anticipates scheduling trial 75 weeks after the case management conference (Doc. 200 at 21-24) and because that judge has a "propensity to move patent cases along at a fast clip" (*id.* at 2). ThermoLife reiterates its assertions of hardship posed by a "significant risk of inconsistent rulings," because the issue whether HumanN's products infringe ThermoLife's patents "is

---

[3] The Court interprets ThermoLife's request for voluntary dismissal as conditioned on a stay being granted. (Doc. 189 at 10 n.2 ["To the extent that the Court rejects any proposed condition, ThermoLife requests the right to consider whether additional conditions are acceptable, and/or withdraw its request for voluntary dismissal."].)

- 5 -

a determination that this Court must make in evaluating HumanN's six counterclaims." (*Id.* at 3-7.)

III.     Analysis

ThermoLife has not met its burden of establishing that a stay is warranted. The Court first considers "the possible damage which may result from the granting of a stay." There are several reasons why a stay may result in damage here. First, ThermoLife acknowledges that "HumanN has noticed 13 depositions of ThermoLife's customers and suppliers, but has taken only two so far, meaning 11 of these depositions will take place before June 21, the close of fact discovery," and "ThermoLife has also noticed 7 depositions that will need to take place between June 1 and June 21." (Doc. 189 at 5.) Granting a stay will interfere with the orderly completion of these depositions, and "[d]elay inherently increases the risk that witnesses' memories will fade and evidence will become stale." *Blue Cross & Blue Shield v. United Outpatient Surgery Ctr.*, 490 F.3d 718, 724 (9th Cir. 2007) (internal quotation marks omitted). Second, although ThermoLife claims that a stay would not be indefinite because the judge overseeing the Texas Litigation has a "propensity to move patent cases along at a fast clip" and because the default case management order in Texas sets trial 75 weeks after the case management conference, these are nothing more than guesses about whether the Texas Litigation will actually follow this customary track. At any rate, even if these guesses prove accurate, ThermoLife is still proposing a lengthy stay that could remain in effect until "late 2022." (Doc. 200 at 2.) Requests for lengthy, open-ended stays are disfavored. *Dependable Highway*, 498 F.3d at 1066-67 ("The order in this case provides no specific deadline for when the stay will terminate. . . . Thus, in light of the general policy favoring stays of short, or at least reasonable, duration, the district court erred by issuing a stay without any indication that it would last only for a reasonable time."). *Cf. VaporStream, Inc. v. Snap Inc.*, 2019 WL 6218950, *2 (C.D. Cal. 2019) ("The parties request a stay of the action in light of the Federal Circuit's decision in *Arthrex*. But . . . the *Arthrex* decision could potentially be reconsidered and modified by the issuing panel, reviewed by the Federal Circuit *en banc*,

and/or reviewed by the Supreme Court in the future. . . . In light of these potential future events, the parties cannot guarantee that their requested stay would be concluded within a reasonable amount of time."). The damage that an indefinite stay would cause HumanN weighs against granting a stay.

The Court next considers the "hardship or inequity" to ThermoLife in being required to go forward in this action. ThermoLife's arguments on this point—that it shouldn't have to bear the risk of "wasted resources with significant discovery and trial burdens but potentially inconsistent and confusing outcomes"—are unpersuasive. ThermoLife filed both actions. It cannot now claim that it has been prejudiced or harmed by its own decisions. *Cf. Evergreen Media Holdings, LLC v. The Safran Co.*, 2015 WL 13357803, *4 (C.D. Cal. 2015) ("Plaintiffs have not provided substantial evidence that they would be damaged absent a stay, whereas a stay will continue to prevent Defendants from obtaining a ruling on this action. . . . Plaintiffs must keep in mind that they filed this action while the arbitration proceedings were taking place. For Plaintiffs to now seek a stay on one action while they litigate the next only benefit[s] Plaintiffs."). If ThermoLife is burdened by wasted resources, that burden was self-imposed. To the extent ThermoLife continues to be concerned about potentially inconsistent rulings, it has the option to request a stay in the Texas Litigation, which, unlike this action, is still in its infancy. The hardship-or-inequity factor thus weighs against granting a stay.

Last, the Court considers the "orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." The parties dispute the extent to which the issues raised in the Texas Litigation will affect the issues raised in this action. The Court need not definitively resolve these arguments because, even if a ruling in the Texas Litigation might simplify the issues in this case, ThermoLife has not shown that such potential for simplification would justify an indefinite stay of this action, which has been pending for almost three years and is on the cusp of the close of discovery, when the alternative is forcing this Court to await a ruling in a suit filed only a few months ago on issues it is fully capable of resolving itself

in due course. A stay of this case is thus not warranted and would not "secure [a] just, speedy, and inexpensive determination" for the parties. Fed. R. Civ. P. 1. And because ThermoLife conditioned the voluntary dismissal of its claims on the granting of a stay, the dismissal request is denied as moot.

Accordingly,

**IT IS ORDERED** that ThermoLife's motion to stay HumanN's counterclaims and dismiss its claims (Doc. 189) is **denied**.

Dated this 2nd day of June, 2021.

Dominic W. Lanza
United States District Judge