**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ThermoLife International LLC, | No. CV-18-02980-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Neogenis Labs Incorporated, | |
| Defendant. | |
| NeoGenis Labs Incorporated, | |
| Counter-Claimant, | |
| v. | |
| ThermoLife International LLC and Ronald L. Kramer, | |
| Counter-Defendants. | |

Pending before the Court is ThermoLife's renewed motion to voluntarily dismiss the Second Amended Complaint ("SAC") without prejudice. (Doc. 202.) For the following reasons, the motion is granted.

## RELEVANT BACKGROUND

As discussed in earlier orders (Doc. 201), this action has been pending for almost three years. The Court and the parties have plodded through (1) two motions to dismiss ThermoLife's complaint (Docs. 40, 63 [orders resolving motions]), resulting in the operative SAC; (2) two motions to dismiss HumanN's counterclaims (Docs. 113, 176

[orders resolving motions]); (3) several requests to stay the case pending settlement discussions (Docs. 76, 78, 80, 82); (4) several requests to extend case deadlines (Docs. 116, 124, 184); and (5) various discovery disputes (Docs. 128, 130, 139, 142, 147, 175, 177). Fact discovery is set to close on July 23, 2021. (Doc. 208.) Even more discovery disputes have popped up in the last few days. (Docs. 219, 222.)

Meanwhile, on February 11, 2021, ThermoLife filed separate lawsuit against HumanN in the Western District of Texas (the "Texas Litigation"), alleging that three of HumanN's products—SuperBeets, BeetElite, and Neo40—infringe three of its patents: Patent Nos. 9,180,140 (the "'140 Patent"), 8,455,531 (the "'531 Patent"), and 10,555,968 (the "'968 Patent"). (Doc. 174-1.) On April 7, 2021, HumanN filed an answer and asserted counterclaims against ThermoLife in the Texas Litigation. (Doc. 174-2.) HumanN's three products, and ThermoLife's past assertions of infringement related to the '140 and '531 Patents, are also at issue in this lawsuit.

Recently, ThermoLife requested a stay of HumanN's counterclaims in this action, arguing (among other things) that the Texas Litigation would "resolve legal disputes between the parties that [would] be dispositive to likely all of HumanN's counterclaims." (Doc. 189 at 4, 6-8.) HumanN disagreed, arguing that it would be prejudiced by a stay and questioning whether the issues in the Texas Litigation would be dispositive of the issues in this action. (Doc. 199.) In this briefing, the parties also disputed whether, assuming a stay was granted, voluntary dismissal of ThermoLife's claims would be proper. (Doc. 189 at 8-10; Doc. 199 at 13-17; Doc. 200 at 9-11.)

The Court denied ThermoLife's stay request, explaining (among other things) that "even if a ruling in the Texas Litigation might simplify the issues in this case, ThermoLife [had] not shown that such potential for simplification would justify an indefinite stay of this action, which has been pending for almost three years and is on the cusp of the close of discovery, when the alternative is forcing this Court to await a ruling in a suit filed only a few months ago on issues it is fully capable of resolving itself in due course." (Doc. 201 at 7.) And "because ThermoLife conditioned the voluntary dismissal of its claims on the

granting of a stay, the dismissal request [was] denied as moot." (*Id.* at 8.)

Soon afterward, ThermoLife filed the pending motion. (Doc. 202.) ThermoLife seeks to dismiss its claims without prejudice under Rule 41(a), with two conditions: "(1) that ThermoLife not refile the claims set forth in the Second Amended Complaint unless and until the Texas Patent Litigation finally resolves, including all appeals; and (2) if ThermoLife refiles the claims set forth in the Second Amended Complaint, it must refile them in this jurisdiction (absent an agreement by HumanN otherwise)." (*Id.* at 1.)

On June 11, 2021, HumanN filed a response. (Doc. 209.)

On June 23, 2021, ThermoLife filed a reply. (Doc. 218.)[1] Neither side requested oral argument.

**DISCUSSION**

I. <u>Legal Standard</u>

Rule 41(a)(2) of the Federal Rules of Civil Procedure provides:

> Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under [Rule 41(a)(2)] is without prejudice.

Whether to grant a motion for voluntary dismissal under Rule 41(a)(2) is a matter of "the district court's sound discretion." *Stevedoring Servs. of Am. v. Armilla Int'l B.V.*, 889 F.2d 919, 921 (9th Cir. 1989). "In exercising its discretion, the Court must make three separate determinations: (1) whether to allow the dismissal at all; (2) whether the dismissal should be with or without prejudice; and (3) what terms and conditions, if any, should be imposed." *Burnette v. Godshall*, 828 F. Supp. 1439, 1443 (N.D. Cal. 1993).

…

---

[1] The operative reply is ThermoLife's amended reply. ThermoLife sought to file its initial reply under seal but the Court denied the sealing request without prejudice because ThermoLife gave "no reasons whatsoever to justify sealing, other than the assertion that the documents at issue were designated as confidential." (Doc. 216 at 2.) On June 23, 2021, ThermoLife filed its amended reply (Doc. 218) and a notice that ThermoLife "determined that [it] could file a modified version of the Reply publicly." (Doc. 217.)

II.     The Parties' Arguments

ThermoLife argues that dismissal is proper because HumanN would not lose any "substantial right" by dismissal and would "instead benefit . . . by avoiding the expense of litigating claims against it." (Doc. 189 at 8.)  ThermoLife also argues that HumanN will benefit from its proposed conditions of dismissal—*i.e.,* "(1) that ThermoLife not refile the claims set forth in the Second Amended Complaint unless and until the [Texas Litigation] finally resolves, including all appeals; and (2) if ThermoLife refiles the claims set forth in the Second Amended Complaint, it must file them in this jurisdiction (absent an agreement by HumanN otherwise)." (Doc. 202 at 1.)  Last, ThermoLife argues that any dismissal should be without prejudice because the case is still in the discovery stage, HumanN has "not had to prepare for trial," and the parties will likely reach a "final resolution" of their disputes in the Texas Litigation.  (Doc. 189 at 9.)

HumanN opposes ThermoLife's request, arguing that dismissal would be improper because ThermoLife "waited two-and-a-half years before bringing its serial motions to voluntarily dismiss, and in both iterations, it has given no explanation for why it delayed so long in requesting voluntary dismissal."  (Doc. 209 at 5, internal quotation marks omitted).  HumanN also argues that it will face "obvious prejudice were ThermoLife allowed to walk away from this case now, right before the close of discovery, only to re-file it down the road." (*Id.*)  Next, HumanN argues that any dismissal of ThermoLife's claims should be with prejudice because "HumanN has expended significant resources in defending itself," "ThermoLife's lack of diligence over the last thirty-four months is patent," and ThermoLife has "offered no coherent explanation as to why it now seeks dismissal of its own claims." (*Id.* at 5-9.)  In HumanN's view, ThermoLife is seeking to dismiss its claims now because ThermoLife knows its claims will not survive summary judgment.  (*Id.*)  Finally, HumanN argues that if the Court is inclined to dismiss without prejudice, ThermoLife should be required to pay HumanN's reasonable attorneys' fees in litigating this action. (*Id.* at 9-10.)

ThermoLife replies that there is "no reason to require ThermoLife to prosecute

claims that, while meritorious, now appear unlikely to entirely resolve the parties' broader disputes." (Doc. 218 at 2.) ThermoLife further argues that HumanN "does not argue that it will lose a substantial right if ThermoLife's claims are dismissed without prejudice" and elaborates on why HumanN will not, in fact, lose any substantial right from dismissal. (*Id.* at 2-7.) As for HumanN's argument that the dismissal request is part of a plot to avoid an adverse ruling at summary judgment, ThermoLife argues that "the potential for the Court to grant a dispositive motion a year from now" is not a relevant factor in determining whether to grant a voluntary dismissal motion, that there is "no basis for the Court to dive into the merits of the case and determine whether it might be inclined to grant a summary judgment motion, after substantial additional discovery takes place," and that its claims are, at any rate, meritorious. (*Id.* at 3, 7-12.) ThermoLife also clarifies that it is willing to attach another condition to its dismissal request—that "if ThermoLife's claims are [refiled], [it] consents to allow the use of the discovery that has been taken" in any later-filed action. (*Id.* at 3-4.) Last, ThermoLife argues that, if dismissal without prejudice is granted, the parties should bear their own attorneys' fees and costs because "HumanN's attorneys have not done any work that cannot be used in a future litigation." (*Id.* at 12-13.)

III. <u>Analysis</u>

    A. **Whether To Allow Dismissal**

Under Ninth Circuit law, "[a] district court should grant a motion for voluntary dismissal under Rule 41(a)(2) unless a defendant can show that it will suffer some plain legal prejudice as a result." *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001) (footnote omitted). *See also Stevedoring Servs. of Am.*, 889 F.2d at 921 ("The purpose of [Rule 41(a)(2)] is to permit a plaintiff to dismiss an action without prejudice so long as the defendant will not be prejudiced or unfairly affected by the dismissal.") (citation omitted). "Legal prejudice" means "prejudice to some legal interest, some legal claim, some legal argument." *Westlands Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996). In contrast, "[u]ncertainty because a dispute remains unresolved is not legal prejudice." *Id.* Thus, "the threat of future litigation . . . is insufficient to establish plain legal prejudice."

*Id.* at 96. *See also Hamilton v. Firestone Tire & Rubber Co., Inc.*, 679 F.2d 143, 145 (9th Cir. 1982) ("Plain legal prejudice . . . does not result simply when defendant faces the prospect of a second lawsuit or when plaintiff merely gains some tactical advantage."). Nor does "the expense incurred in defending against a lawsuit," because the "defendants' interests can be protected by conditioning the dismissal without prejudice upon the payment of appropriate costs and attorney fees." *Westlands Water Dist.*, 100 F.3d at 97.

HumanN has not established that it will suffer "plain legal prejudice" if ThermoLife's claims are dismissed. HumanN's primary argument is that it would "face obvious prejudice were ThermoLife allowed to walk away from this case now, right before the close of discovery, only to re-file it down the road" (Doc. 209 at 5), but the Ninth Circuit has made clear that this sort of harm isn't sufficient under Rule 41(a)(2)—the "threat of future litigation which causes uncertainty is insufficient to establish plain legal prejudice." *Westlands Water Dist.*, 100 F.3d at 96. Nor are the attorneys' fees and costs incurred by HumanN. *Id.* at 97.

HumanN also invokes *Central Montana Rail, Inc. v. BNSF Railway Co.*, 422 F. App'x 636 (9th Cir. 2011), in which the Ninth Circuit held that a district court did not abuse its discretion in denying a request for voluntary dismissal where (1) the defendant could "face litigation in state court of a claim that had reached the summary judgment stage in federal court, after almost four years of litigation"; (2) the plaintiff had "given no explanation for why it delayed so long in requesting voluntary dismissal"; (3) the defendant would "be denied a federal forum were the motion granted"; and (4) the "Rule 41(a)(2) motion was motivated by forum shopping." *Id.* at 638. But the circumstances present in *Central Montana Rail* are not present here. In that case, "[a]s a result of [the court's] prior rulings," only one claim remained, which had been assigned to the plaintiff by the State of Montana. *Cent. Mont. Rail, Inc. v. BNSF Ry. Co.*, 2010 WL 11534149, *3 (D. Mont. 2010). After "years of litigation," several adverse rulings, and after the defendant filed a motion for summary judgment on the sole remaining claim, Montana voluntarily terminated the assignment and sued the defendant in state court on a "nearly identical factual basis" and

indicated that it would relitigate an issue that "was already litigated and decided in the present case." *Id.* (emphasis omitted). Accordingly, it was "not simply a second lawsuit that [the defendant] face[d], but . . . the re-litigation of the same issues which [had] already [been] decided in th[e] case." *Id.* (emphasis omitted). *See also id.* at *4 ("In sum, the State of Montana disagrees with this Court's past rulings and wants to re-litigate those rulings elsewhere. . . . The State of Montana has now filed suit in State court, defying this Court's rulings and the arbitrator's decision, and once again is expressly seeking payment from [the defendant] on a per-car basis."). The court also noted that the timing was suspicious given that "[o]nly after four years of litigation, several rulings against it, and the filing of a final motion by [the defendant] that would dispose of the entire case on the merits, did the State of Montana decide to assume the costs and burdens associated with this litigation and terminate the assignment to avoid certain, final defeat." *Id.* (internal quotation marks omitted). Although the "filing of a summary judgment motion [did] not, *per se*, establish legal prejudice, the attempts by [the plaintiff] to avoid judgment against it, and consequently the State of Montana, support[ed] denial of its Motion to Dismiss." *Id.* at *4.

Here, no dispositive motions have been filed, there is nothing to indicate that HumanN would be deprived of a federal forum if voluntary dismissal were granted, and HumanN has not argued that ThermoLife is attempting to relitigate in the Texas Litigation any of the issues decided in this case. Nor has ThermoLife indicated that it intends to relitigate issues already decided in this action in any refiled action—instead, it argues that the parties would "restart exactly where this case left off." (Doc. 218 at 2.) Although the parties (and the Court) could have avoided expending substantial resources on this action had ThermoLife pursued a different litigation strategy, the Court does not, on balance, find ThermoLife's actions to be on par with the behavior found unacceptable in *Central Montana Rail*. The Court is not unsympathetic to HumanN's irritation at ThermoLife's request for dismissal at this stage of the case, but such irritation does not qualify as "plain legal prejudice." And under Ninth Circuit law, voluntary dismissal should be granted in the absence of such prejudice.

B. **With Or Without Prejudice**

"Rule 41(a)(2) provides that, unless otherwise specified in the court's order, the dismissal is without prejudice. Whether to allow dismissal with or without prejudice is discretionary with the court, and it may order the dismissal to be with prejudice where it would be inequitable or prejudicial to defendant to allow plaintiff to refile the action." *Burnette*, 828 F. Supp. at 1443. Courts consider the following factors in determining whether to dismiss with or without prejudice: (1) "the defendant's effort and expense involved in preparing for trial"; (2) "excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action"; and (3) "insufficient explanation of the need to take a dismissal." *Id.* at 1443-44 (internal quotation marks omitted).

The first factor weighs in favor of ThermoLife. Although HumanN has undoubtedly expended significant resources litigating this case, the bulk of those resources have been spent on motions practice and on discovery, no dispositive motions have been filed, and there is nothing to indicate that HumanN has started preparing for trial. *Cf. Sacchi v. Levy*, 2015 WL 12765637, *3 (C.D. Cal. 2015) ("[A]lthough defendants assert that they have spent more than $30,000 defending this action, no dispositive motions have been filed . . . . The court presumes that the bulk of the parties' work has been discovery given that the fact discovery cut-off date recently passed. Because of the pendency of this motion, it is virtually certain that no dispositive motions have been drafted or trial preparation begun.") (footnotes omitted). Additionally, "[w]ere the action ever to be reinstituted . . . the work that has been done would continue to be of value." *Id.* This is especially true in light of ThermoLife's agreement to permit all discovery obtained in this action to be used in any refiled action. Finally, and as discussed in more detail in Part III.C below, HumanN has asserted an array of counterclaims in this action. The presence of those counterclaims makes it difficult to pin all of the blame on ThermoLife for the resources the parties have expended during the discovery and early motions processes in this case.

The second factor also weighs in ThermoLife's favor. ThermoLife has not engaged in excessive delay tactics or shown a lack of diligence. Although this action has progressed

at a regrettably slow pace, the delays were largely due to the parties' continued efforts to settle, to the several rounds of motion-to-dismiss briefing, to the many discovery disputes, and to complications resulting from the COVID-19 pandemic.

The third factor does not weigh in ThermoLife's favor but does not cut decisively against ThermoLife, either. To be sure, ThermoLife has provided *a* rationale for its dismissal request—it contends "there is no reason to require ThermoLife to prosecute claims that, while meritorious, now appear unlikely to entirely resolve the parties' broader disputes." (Doc. 218 at 6.) But this does not strike the Court as a particularly compelling explanation. If ThermoLife truly believed its existing claims were "meritorious," it would have an incentive to continue litigating them regardless of whether they would, standing alone, have the potential to resolve ThermoLife's broader dispute with HumanN. This is particularly true because this *action* will not go away even if ThermoLife's dismissal request is granted—HumanN has asserted counterclaims against ThermoLife that will remain pending regardless of what happens with ThermoLife's claims. Given this backdrop (coupled with the unusual timing of the dismissal request, which comes on the eve of the discovery cutoff and soon after ThermoLife filed a separate lawsuit against HumanN in Texas), the Court suspects there may be a tactical aspect to ThermoLife's dismissal request that has not been fully explored in its motion papers.

Nevertheless, even if the final factor cuts slightly against ThermoLife, it does not outweigh the other two factors. The Court will thus permit ThermoLife to dismiss its claims without prejudice.

C. **Conditions Of Dismissal**

The Court agrees with all of ThermoLife's proposed conditions of dismissal and imposes them here, as follows: (1) ThermoLife may not refile the claims set forth in the Second Amended Complaint unless and until the Texas Litigation finally resolves, including all appeals; (2) if ThermoLife refiles the claims set forth in the Second Amended Complaint, it must refile them in this jurisdiction; and (3) if ThermoLife's claims are refiled, the discovery that has been taken in this action may be used in the later-filed action.

(Doc. 218 at 13.)

A final disputed issue is whether ThermoLife should be required, as an additional condition of dismissal, to pay all (or some) of HumanN's attorneys' fees. (Doc. 209 at 9-10; Doc. 218 at 12-13.) The Court declines to impose such a condition. It is true that "costs and attorney fees are often imposed upon a plaintiff who is granted a voluntary dismissal . . . ." *Stevedoring Servs. of Am.*, 889 F.2d at 921; 1 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 41, at 1258 (2021) (noting that the "most common condition" imposed by courts on voluntary dismissals is "to require the plaintiff to compensate the defendant for costs and attorney's fees incurred in that suit"). However, the imposition of such attorneys' fees and costs is not required by Rule 41(a)(2). *Stevedoring Servs. of Am.*, 889 F.2d at 921. Here, the Court exercises its discretion to decline to award fees and costs because, as discussed in Part III.B above, HumanN contributed to the parties' expenditure of fees and costs by asserting an array of counterclaims, some of which will remain pending even after ThermoLife's claims are dismissed. Under these circumstances, the case for requiring ThermoLife to pay all (or even some) of the fees and costs incurred to date by HumanN is less compelling. *See, e.g., Disantillo v. Simon Prop. Grp.*, 2015 WL 5834150, *2 (W.D. Mo. 2015) (concluding that "the proper terms for dismissal under Rule 41(a)(2) require that the parties[] bear their own costs, attorneys' fees, and expenses" in part because "granting [plaintiff's] motion for voluntary dismissal does not resolve all claims because [defendant's] counterclaims remain pending" and defendant could obtain attorneys' fees pursuant to its counterclaims); *Heartland Recreational Vehicles, LLC v. Forest River, Inc.*, 2010 WL 497327, *10 n.8 (N.D. Ind. 2010) ("[T]he Court declines the Defendant's request for fees and costs [as a condition of voluntary dismissal under Rule 41(a)(2)] because much of the legal work undertaken to this point can be used in the prosecution of the Defendant's counterclaims and because the Defendant has a claim for attorney's fees under 35 U.S.C. § 285 that remains pending."); *Mid-Continent Cas. Co. v. Subterra, Inc.*, 2008 WL 4372352, *2 (W.D. Wash. 2008) ("It is not an abuse of discretion by the district court to deny attorneys'

fees for specific and particular reasons. Here, the Court finds that Subterra will not suffer any prejudice as a result of Mid-Continent's voluntary dismissal. As mentioned above, Mid-Continent has expressly indicated that its dismissal does not affect Subterra's counterclaims. Indeed, Subterra's counterclaims against Mid-Continent remain intact, and Subterra remains free to pursue attorneys' fees and costs associated with its counterclaims.").

Accordingly,

**IT IS ORDERED** that ThermoLife's motion to dismiss (Doc. 202) is **granted**.

**IT IS FURTHER ORDERED** that (1) ThermoLife may not refile the claims set forth in the Second Amended Complaint ("SAC") unless and until the Texas Litigation finally resolves, including all appeals; (2) if ThermoLife refiles the claims set forth in the SAC, it must refile them in this jurisdiction; and (3) if ThermoLife's claims are refiled, the discovery that has been taken in this action may be used in the later-filed action.

Dated this 30th day of June, 2021.

_____
Dominic W. Lanza
United States District Judge