**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ThermoLife International LLC, | No. CV-18-02980-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Neogenis Labs Incorporated, | |
| Defendant. | |
| NeoGenis Labs Incorporated, | |
| Counter-Claimant, | |
| v. | |
| ThermoLife International LLC and Ronald L. Kramer, | |
| Counter-Defendants. | |

Last month, the Court granted ThermoLife's motion to voluntarily dismiss its claims against HumanN. (Doc. 224.) However, HumanN's counterclaims against ThermoLife and its president, Ronald L. Kramer ("Kramer") (collectively, "ThermoLife"), remain pending, and HumanN has now moved to transfer those counterclaims to the Western District of Texas. (Doc. 227.) For the following reasons, the motion is denied.

**RELEVANT BACKGROUND**

As discussed in earlier orders (Docs. 201, 224), this action has been pending for almost three years. Meanwhile, on February 11, 2021, ThermoLife filed a separate lawsuit

against HumanN in the Western District of Texas (the "Texas Litigation"), alleging that three of HumanN's products—SuperBeets, BeetElite, and Neo40—infringe three of its patents: Patent Nos. 9,180,140 (the "'140 Patent"), 8,455,531 (the "'531 Patent"), and 10,555,968 (the "'968 Patent"). (Doc. 174-1.) On April 7, 2021, HumanN filed an answer and asserted counterclaims against ThermoLife in the Texas Litigation. (Doc. 174-2.) HumanN's three products and ThermoLife's past assertions of infringement related to the '140 and '531 Patents (but not the '968 Patent) are also at issue in this lawsuit.

Recently, ThermoLife requested a stay of HumanN's counterclaims in this action, arguing (among other things) that the Texas Litigation would "resolve legal disputes between the parties that [would] be dispositive to likely all of HumanN's counterclaims." (Doc. 189 at 4, 6-8.) HumanN disagreed, arguing that it would be prejudiced by a stay and questioning whether the issues in the Texas Litigation would be dispositive of the issues in this action. (Doc. 199.) The parties also disputed whether, assuming a stay was granted, voluntary dismissal of ThermoLife's claims would be proper. (Doc. 189 at 8-10; Doc. 199 at 13-17; Doc. 200 at 9-11.)

The Court denied ThermoLife's stay request, concluding (among other things) that "even if a ruling in the Texas Litigation might simplify the issues in this case, ThermoLife [had] not shown that such potential for simplification would justify an indefinite stay of this action, which has been pending for almost three years and is on the cusp of the close of discovery, when the alternative is forcing this Court to await a ruling in a suit filed only a few months ago on issues it is fully capable of resolving itself in due course." (Doc. 201 at 7.) And "because ThermoLife conditioned the voluntary dismissal of its claims on the granting of a stay, the dismissal request [was] denied as moot." (*Id.* at 8.)

Soon afterward, ThermoLife filed a renewed motion to voluntarily dismiss its claims against HumanN. (Doc. 202.) The Court granted ThermoLife's request and imposed the following conditions of dismissal: (1) ThermoLife could not "refile the claims set forth in the Second Amended Complaint ('SAC') unless and until the Texas Litigation finally resolves, including all appeals"; (2) "if ThermoLife refile[d] the claims set forth in

- 2 -

the SAC, it must refile them in this jurisdiction"; and (3) "if ThermoLife's claims [were] refiled, the discovery that has been taken in this action may be used in the later-filed action." (Doc. 224.)

Thus, the sole remaining claims in this case are five of HumanN's counterclaims: false advertising under the Lanham Act and state-law claims for unfair competition, tortious interference with business expectancy, trade libel, and violation of Arizona's Patent Troll Prevention Act ("PTPA"). (Doc. 117 at 61-67.)[1]

During a recent telephonic discovery dispute hearing, HumanN's counsel asked if the Court would "consider a motion to transfer [its] counterclaims to the [Texas Litigation] so that [the parties would] only [be] litigating in one forum." (Doc. 233 at 66.) The Court stated that its "initial instinct [was], if the law supported it, [it] would be fine with that outcome" but that the Court would "need to see [the issue] briefed" and would "need to look at all the transfer factors . . . to decide whether it's legally warranted." (*Id.* at 67.)

HumanN has now filed the pending transfer motion (Doc. 227), which ThermoLife opposes (Doc. 232).[2] The motion is fully briefed. (Docs. 227, 232, 234.)[3]

**ANALYSIS**

I. <u>Legal Standard</u>

Under 28 U.S.C. § 1404(a), a district court "may transfer any civil action to any other district or division where it might have been brought" if a transfer would promote "the convenience of parties and witnesses [and] the interest of justice." Section 1404(a) thus vests courts with the discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks omitted).

If the action could have originally been brought in the proposed transferee forum,

---

[1] HumanN also asserted a claim for attempted monopolization under the Sherman Act (Doc. 117 at 59-61), but it has since been dismissed (Doc. 176).

[2] On July 12, 2021, HumanN moved for expedited consideration of its motion (Doc. 228), which the Court granted (Doc. 231).

[3] The parties requested oral argument (Docs. 227, 232, 234) but these requests are denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv 7.2(f).

- 3 -

the Court must then "weigh multiple factors in its determination whether transfer is appropriate in [this] particular case." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). There are eight factors that courts frequently consider:

> (1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009). "This list is non-exclusive, and courts may consider other factors, or only those factors which are pertinent to the case at hand." *Kempton v. Life for Relief and Dev. Inc.*, 2019 WL 5188750, *2 (D. Ariz. 2019). *See also Jones*, 211 F.3d at 498-99 (providing a similar list of factors and noting "that the relevant public policy of the forum state" may be a relevant consideration). "No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." *Tech. Credit Corp. v. N.J. Christian Acad., Inc.*, 307 F. Supp. 3d 993, 1004 (N.D. Cal. 2018) (internal quotation marks omitted). "The burden of establishing that an action should be transferred is on the moving party." *Cambridge Filter Corp. v. Int'l Filter Co.*, 548 F. Supp. 1308, 1310 (D. Nev. 1982).

II. <u>Analysis</u>

HumanN argues that, because of the "significantly changed circumstances since this case was filed, the Western District of Texas now is the most convenient forum" and transfer is appropriate. (Doc. 227.) ThermoLife opposes transfer, arguing that the Western District of Texas—the transferee court—lacks personal jurisdiction over it, so the Western District of Texas is not a forum in which the case "could have been brought," and the factors otherwise don't weigh in favor of transfer. (Doc. 232.) HumanN replies that the Western District of Texas need not have personal jurisdiction over ThermoLife because § 1404 does not protect plaintiffs from transfer and, in any event, ThermoLife—and, through an alter ego theory, Kramer—consented to personal jurisdiction in the Western District of Texas by filing the Texas Litigation against HumanN. (Doc. 234.)

For the reasons explained below, even assuming that HumanN's counterclaims could have been brought in the Western District of Texas—a question the Court need not decide—HumanN has not met its burden of showing that transfer is warranted. *Cf. Jacob v. Rusk*, 2016 WL 9136169, *5 (C.D. Cal. 2016) ("Section 1404(a) does not concern the issue whether and where an action may be properly litigated. It relates solely to the question where, among two or more proper forums, the matter should be litigated to best serve the interests of judicial economy and convenience of the parties.") (internal quotation marks omitted).[4]

### A. Plaintiff's Choice Of Forum

HumanN argues that ThermoLife's initial choice of forum, the District of Arizona, is entitled to no weight because ThermoLife "chose to voluntarily dismiss all of its own claims against HumanN in this forum, and further affirmatively chose to bring *another* suit against HumanN in the Western District of Texas—precisely the forum in which HumanN would prefer to litigate." (Doc. 227 at 6-7.) HumanN further argues that, because ThermoLife's claims have been dismissed and HumanN's counterclaims are the only claims remaining in this suit, HumanN is "now the true and only 'plaintiff' in this case" and its preferred forum, the Western District of Texas, "should be afforded its due—and significant—weight." (*Id.* at 7-8.)

Although HumanN's logic has surface appeal, it is been repeatedly rejected by other courts. "[T]he case law affording substantial consideration to a plaintiff's choice of forum does so because that person made a choice to litigate in a particular forum. [ThermoLife] is still litigating in this forum, and nothing in the case law suggests that the fact that [ThermoLife] is proceeding only as a counterclaim defendant converts [HumanN] into the plaintiff for purposes of this rule. [HumanN] merely has a preference that its counterclaims be litigated in the [Western District of Texas], and such preference is not entitled to 'substantial deference' . . . ." *Higher One, Inc. v. Touchnet Info. Sys., Inc.*, 2015 WL 13631251, *2 (D. Conn. 2015). *Cf. Rsch. in Motion Ltd. v. Visto Corp.*, 2007 WL 1452092,

---

[4] The Court has not addressed every potential factor identified in *Jones* and its progeny. Instead, it has limited its analysis to the factors deemed relevant by the parties.

- 5 -

\*5 (N.D. Tex. 2007) ("[E]ven assuming that Visto is correct that it will now be considered the plaintiff in the instant suit, Visto earned this party status by default. Visto, as the declaratory judgment plaintiff, did not in any sense 'choose,' in the first instance, to file its claims in this court. Rather, Visto filed its counterclaims here after RIM, as plaintiff, chose this forum. The fact that its claims remain pending in this court now that RIM has voluntarily dismissed its own claims does not convert the choice of filing in the Northern District of Texas to one made by Visto. Thus the usual reasons justifying giving the plaintiff's choice of forum special deference do not exist here."). ThermoLife's initial choice of forum is thus still the relevant consideration, even now that it has voluntarily dismissed its affirmative claims.

"For purposes of a section 1404(a) analysis, the plaintiff's choice of forum always weighs against transfer. Thus, the question for the Court is how much weight to give this choice relative to the other factors." *Martin v. Global Tel\*Link Corp.*, 2015 WL 2124379, \*4 (N.D. Cal. 2015). In general, "a plaintiff's choice of forum is afforded substantial weight." *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001). ThermoLife, the relevant plaintiff, is an Arizona company. (Doc. 182 ¶ 10 [admitting Arizona citizenship].) As a resident of this District, its choice of forum is entitled to deference, *see, e.g.*, *Global Thermoforming Inc. v. Auto-Owners Ins. Co.*, 2021 WL 65981, \*4 (D. Ariz. 2021) ("Some courts have held that additional weight is given to the plaintiff's choice when the plaintiff has selected its home forum."), and HumanN has not offered any other reasoned argument to disturb this choice. *Compare Rousseaux v. Fin. Indus. Regul. Auth., Inc.*, 2008 WL 11508653, \*2 (S.D. Cal. 2008) ("Although a plaintiff's choice of forum is usually accorded substantial weight in proceedings under § 1404(a), a plaintiff's choice deserves less deference if the venue is not plaintiff's residence, or if the forum lacks a meaningful connection to the conduct alleged.").[5] This factor thus weighs against transfer.

…

---

[5] HumanN's argument that the "only connection this suit has with Arizona is the location of a ThermoLife drop box at a Mailboxes & More store" (Doc. 234 at 11) is puzzling given that most of HumanN's counterclaims arise under or are for violations of Arizona law.

- 6 -

B. **Convenience Of Parties And Witnesses And Access To Evidence**

HumanN argues that the convenience of the parties and witnesses "never favored Arizona in this case" because Kramer "maintains his residence and ThermoLife's office in California, while HumanN's records and personnel are in Austin, Texas," "none of the witnesses or evidence is in Arizona," and because "making [the witnesses] travel to two different jurisdictions for interrelated proceedings makes no sense." (Doc. 227 at 10-11.) ThermoLife responds that this District is more convenient because ThermoLife is an Arizona company and Kramer (who is domiciled in Arizona) currently lives in California, which is closer to Arizona than Texas. (Doc. 232 at 12.) ThermoLife also argues that "there is no overpowering argument that access to evidence will be greater or better in one jurisdiction versus another" given remote technology and, in any event, the evidence "must necessarily be tied to Arizona" because the "remaining claims are steeped in Arizona law" and are "premised on damage connected to Arizona." (*Id.* at 12-13.)

The convenience-of-the-parties factor does not weigh for or against transfer. Although it would be more convenient for HumanN to litigate in the Western District of Texas, it would be more convenient for ThermoLife to litigate in this District. It's also difficult to understand how either of the parties could claim inconvenience by litigating in a forum in which they are already litigating (and have been litigating for nearly three years). *Cf. Kudsk v. Bara Infoware, Inc.*, 2019 WL 2775573, *5 (N.D. Cal. 2019) ("Neither party will be prejudiced or inconvenienced by litigation in the Central District of California, as evidenced by the fact that both parties are simultaneously litigating related or identical claims in that district and have not raised venue-related concerns there.").

Nor has HumanN shown that witnesses would be inconvenienced by litigation in this District. "The convenience of witnesses is often the most important factor considered by the court when deciding a motion to transfer for convenience." *Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1215 (S.D. Cal. 2013) (internal quotation marks omitted). "To demonstrate an inconvenience to witnesses, the moving party must identify relevant witnesses, state their location and describe their testimony and its relevance."

*Hoefert v. Am. Airlines*, 2018 WL 2740276, *3 (D. Ariz. 2018) (internal quotation marks omitted). Here, HumanN has done no more than assert that "none of the witnesses . . . is in Arizona" and "there are actual documents and witnesses" in Texas. (Doc. 227 at 10-11; Doc. 234 at 11.) Such vague assertions are insufficient for HumanN to meet its burden of showing that specific witnesses would be inconvenienced by litigation in this District. *Cf. Hawkins*, 924 F. Supp. 2d at 1215-16 (finding this factor neutral where movant didn't identify any relevant third-party witnesses). HumanN instead appears to argue that the witnesses would be inconvenienced by a second suit altogether because "making [witnesses] travel to two different jurisdictions for interrelated proceedings makes no sense," but this does nothing to show that litigation in the District of Arizona would be more of an inconvenience than the Western District of Texas. The same could be said of any other court. It also assumes this action would be consolidated with the Texas Litigation following transfer—otherwise, witnesses might still be in a position of making two trips. This factor is thus neutral, or at most weighs mildly in favor of transfer.

The Court is also unpersuaded by HumanN's argument concerning access to evidence. As an initial matter, remote technology does not transform the ease of access to evidence into a wholly irrelevant consideration. *Cf. Grabham v. Am. Airlines Inc.*, 2019 WL 316213, *3 (D. Ariz. 2019) ("[T]he Court is not persuaded by Plaintiff's argument that advances in discovery technology have rendered irrelevant the location of the key documents."). Nevertheless, this factor "no longer carries much weight in the transfer analysis given that technology has made it easier for documents to be transferred to different locations." *Kissick v. Am. Residential Servs., LLC*, 2019 WL 6434639, *6 (C.D. Cal. 2019). HumanN has not identified any specific piece of evidence that would be more difficult to access in this District than in the Western District of Texas. *Cf. Pierucci v. Homes.com Inc.*, 2020 WL 5439534, *6 (D. Ariz. 2020) ("When a party fails to suppl[y] the court with any information regarding what documents may be relied upon that are only available in hard copy or could not be produced electronically, this factor is neutral.") (alteration in original) (internal quotation marks omitted). And even if HumanN had

- 8 -

identified such evidence, HumanN's argument does not carry as much force at this stage of the litigation—fact discovery is nearly complete and most of the evidence has presumably already been acquired or produced. This factor is, again, neutral.

### C. Familiarity With Applicable Law

HumanN argues that the familiarity-with-governing-law factor does not weigh against transfer because both "this Court and the Western District of Texas are equally familiar with the federal law giving rise to HumanN's false advertising claim under the Lanham Act," HumanN's Arizona unfair competition claim is substantially identical to the false advertising claim, the state-law tortious interference and trade libel claims are "similar to . . . the same tort[s] under Texas law," and the judge presiding over the Texas Litigation "undoubtedly will be capable of reviewing and applying the [Arizona Patent Troll Prevention Act] to the evidence presented by HumanN and ThermoLife." (Doc. 227 at 8-10.)

ThermoLife responds that all but one of HumanN's claims are Arizona state-law claims, so there is "little reason why a federal court in Texas or a Texas jury should decide these Arizona state law issues, particularly when the case is close to completing discovery in Arizona." (Doc. 232 at 7.) ThermoLife also argues that HumanN's claim under the PTPA, which was recently enacted and has not yet been substantively interpreted by other courts, should be decided by an Arizona court "[g]iven the importance of this legislation to Arizona policy," because Texas does not have an analogous statute that authorizes a private right of action, and because ThermoLife suggests that it intends to renew its argument that the PTPA is preempted by federal law. (*Id.* at 7-9.)[6]

---

[6] ThermoLife raised the possibility of a preemption challenge in its first motion to dismiss HumanN's counterclaims, which was filed in April 2020 (Doc. 97 at 16 n.20), but the Court declined to address the issue at that time because "the argument [was] raised only in passing in a footnote on the last page of ThermoLife's brief." (Doc. 113 at 30.) The Court also "strongly encouraged" ThermoLife to comply with Rule 5.1 if it indeed chose to "properly raise a preemption challenge . . . during a future stage of [the] case." (*Id.*) ThermoLife has not done so in the nine months since it received this invitation. Without prejudging the issue, it is difficult to see how this approach could be viewed as compliant with Rule 5.1(a)'s requirement that "[a] party that files a pleading, written motion, or other paper drawing into question the constitutionality of a . . . state statute *must promptly*: (1) file a notice of constitutional question stating the question and identifying the paper that raises it . . . and (2) serve the notice and paper on . . . the state attorney general if a state

HumanN replies that ThermoLife "offers no real argument that any of the claims sounding in Arizona law, other than the one under the Patent Troll statute, differ from their Texas counterparts, or would offer any interpretive challenge to [the judge presiding over the Texas Litigation]." (Doc. 234 at 9-10.) As for ThermoLife's PTPA argument, HumanN argues that "there is no particular complexity [to the statute]; while the statute is *detailed*, it sets for the claim's elements clearly." (*Id.*) Finally, HumanN contends that if ThermoLife were to raise a preemption argument, "any ruling—either in this or the transferee District—will be governed by Federal Circuit law, regardless of which district court performs it." (*Id.*)

"The familiarity-with-governing-law factor is meant to apply in cases involving state-law claims—it reflects a presumption that a federal court will know more about the substantive law of its home state (having derived this wisdom from handling diversity suits) than a federal court located in a different state." *Grabham*, 2019 WL 316213 at *4. HumanN concedes this Court has greater familiarity with Arizona law than the Western District of Texas, and the Court agrees. All but one of HumanN's counterclaims arise under Arizona state law, which weighs against transfer. To be sure, the state-law unfair competition and trade libel claims will rise or fall with the Lanham Act false advertising claim, which somewhat lessens the effect of any unfamiliarity with Arizona law. (*See, e.g.*, Doc. 113 at 22 [noting that the "parties do not dispute that the Lanham Act analysis . . . applies similarly to the unfair competition and trade libel claims"].) ThermoLife is correct, however, that the remaining claims (tortious interference with business expectancy and violation of the PTPA) are governed by Arizona law, and the Court's familiarity with Arizona law—particularly the familiarity the Court has obtained over the course of several rounds of motion-to-dismiss briefing—is not to be ignored.

The Court, to be clear, has no doubt that the judge presiding over the Texas Litigation is entirely capable of analyzing and interpreting Arizona law. Nevertheless, because it is undisputed that at least some of the remaining claims are state-law claims that

---

statute is questioned." *Id.* (emphasis added).

will need to be resolved under state law, this Court's greater familiarity with Arizona law weighs against transfer, albeit perhaps only slightly.

### D. Feasibility Of Consolidation

HumanN argues that the prospect of consolidating its counterclaims in this case with the claims in the Western District of Texas is a "significant factor" favoring transfer. (Doc. 227 at 4-6.) HumanN also argues that the Court need not speculate whether consolidation will occur but, instead, need only consider whether consolidation is feasible. (*Id.*) ThermoLife responds that consolidation is not likely or feasible because "HumanN has apparently declined to apprise [the judge presiding over the Texas Litigation] of its intent to consolidate this case with the Texas case." (Doc. 232 at 9.) ThermoLife also argues that HumanN's representations as to the likelihood of consolidation—that consolidation would "allow the interrelated claims in the two cases to proceed with the greatest efficiency" (Doc. 227 at 5)—are contrary to its previous representations (when opposing ThermoLife's stay and dismissal requests) that the timeline of the Texas Litigation is unknown and that there is little overlap between the issues in this case and in the Texas litigation. (Doc. 232 at 9-11.) In reply, HumanN again argues that the Court need not engage in an analysis of whether the judge presiding over the Texas Litigation will grant a motion to consolidate and that it hasn't sought consolidation in the Texas Litigation yet because the issue would not be ripe before a transfer. (Doc. 234 at 10-11.)

HumanN is correct that the "feasibility of consolidation is a significant factor in the transfer decision." *A.J. Indus., Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 503 F.2d 384, 389 (9th Cir. 1974). And "[i]n general, cases should be transferred to districts where related actions are pending." *Bratton v. Schering-Plough Corp.*, 2007 WL 2023482, *5 (D. Ariz. 2007) (internal quotation marks omitted). Nevertheless, the feasibility analysis is much closer than HumanN portrays it to be. HumanN has consistently represented to the Court that the issues in this case and the Texas Litigation are different and has disputed ThermoLife's previous representations that the Texas Litigation would necessarily resolve HumanN's counterclaims. For example, in HumanN's opposition to

ThermoLife's unsuccessful motion to stay HumanN's counterclaims, HumanN argued that a "ruling in the infringement suit [would] *not* resolve HumanN's counterclaims" and that "HumanN's counterclaims [in this action] are not a replication or mirror image of the claims and counterclaims in the [Texas Litigation], which means the discovery taken there will have limited (and, in some instances, no) utility with respect to HumanN's claims here for false advertising, unfair competition, and the rest." (Doc. 199 at 1, 8. *See also id.* at 11 ["Irrespective of the eventual outcome of the [Texas Litigation], ThermoLife's advertising remains false and defamatory . . . . None of these false statements have anything to do with whether the '140, '531, or '968 patents are valid or infringed."]; *id.* at 11-12 ["[I]n the [Texas Litigation], ThermoLife accuses *only* Neo40 of infringing the '531 Patent, and *not* SuperBeets or BeetElite. As alleged in HumanN's Amended Counterclaims, however, Amazon suspended sales of both SuperBeets and Beet Elite based on ThermoLife's tortious falsehood that these products infringed the '531 Patent. Thus, even an eventual ruling in ThermoLife's favor in the [Texas Litigation] on the '531 Patent will have no impact on this aspect of HumanN's claims of tortious interference, unfair competition, trade libel, and violation of Arizona's Patent Troll Prevention Act."], citations omitted.) In its motion to transfer, too, HumanN argues that ThermoLife's previous assertion that the Texas Litigation would resolve the parties' disputes in this action is "clearly an overstatement" and notes that it "disagrees as to any preclusive effect of the patent litigation on its counterclaims." (Doc. 227 at 5.)

The feasibility of consolidation is further undermined (albeit not eliminated) by the fact that the two actions have very different procedural postures—this case is nearly three years old, and discovery is nearly complete, while the Texas Litigation is in its nascent stages.

For these reasons, this factor is thus either neutral or weighs slightly in favor of transfer.

E.   **Costs Of Litigation**

Last, HumanN argues that "ThermoLife already has counsel in Texas, while

- 12 -

HumanN similarly has had to retain multiple sets of lawyers for Arizona and Texas," so "[p]ursuing litigation in a single forum would allow both sides to trim their legal bills." (Doc. 227 at 11.) ThermoLife responds that "the only purported possibility for meaningful cost-savings is if the cases are consolidated," but "it is not feasible for the cases to be consolidated at this point." (Doc. 232 at 14.)

"[A]ttorneys' fees and costs are relevant to the question of litigation costs because they are borne by the parties." *Shields v. Amerigas Propane, Inc.*, 2015 WL 5436772, *5 (E.D. Cal. 2015). The parties don't appear to dispute that litigation costs would be lower if the Court were to grant the motion to transfer. Accordingly, this factor weighs in favor of transfer.

F. **Judicial Efficiency**

A factor that weighs heavily against transfer, under the particular circumstances of this case, is judicial efficiency. *Eli Lilly & Co. v. Genentech, Inc.*, 2013 WL 4396718, *5-6 (noting that "where the convenience factors are due little weight, judicial economy [was] the decisive factor"). This case has been heavily litigated in the District of Arizona for several years. As a result, the Court is intimately familiar with the parties, factual and procedural history, contested issues of law, and evidentiary record. Using the Court's existing knowledge and understanding of the intricacies of this lawsuit will promote judicial efficiency and economy. *Compare Baglama v. MWV Consumer & Off. Prods.*, 2013 WL 12200647, *8 (C.D. Cal. 2013) (finding transfer was warranted in part because the related action was "pending five months longer than the instant case" and the transferee court was "better acquainted with the parties and issues," which would "serve judicial economy"); *Madani v. Shell Oil Co.*, 2008 WL 268986, *2 (N.D. Cal. 2008) ("The Court finds that concerns of judicial efficiency counsel strongly in favor of transfer. Judicial resources are conserved when an action is adjudicated by a court that has already committed judicial resources to the contested issues and is familiar with the facts of the case.") (internal quotation marks omitted). In the Court's view, transferring the lawsuit at this point in the litigation would undermine rather than promote judicial efficiency.

### G. Weighing The Factors

Three factors—plaintiff's choice of forum, familiarity with governing law, and judicial efficiency—weigh against transfer, and the latter is entitled to particular weight under the facts of this case. Two factors—convenience of the parties and access to evidence—are neutral. Two factors—convenience of the witnesses and feasibility of consolidation—are neutral or weigh slightly in favor of transfer. Only one factor—the cost of litigation—weighs unabashedly in favor of transfer. Litigation cost, in this instance, is not enough to overcome the factors weighing against transfer, particularly judicial efficiency. HumanN has not met its burden of showing that transfer is warranted.

Accordingly,

**IT IS ORDERED** that HumanN's motion to transfer (Doc. 227) is **denied**.

Dated this 2nd day of August, 2021.

_____
Dominic W. Lanza
United States District Judge